In re Richard Nelson LINDGREN, Sue Ann Lindgren, Debtors.

Bankruptcy No. B81–01459–Y.

United States Bankruptcy Court, N.D. Ohio.

March 16, 1988.

James J. Connelly, Warren, Ohio, for debtors.

Michael A. Gallo, Youngstown, Ohio, Trustee.

Thomas E. Schubert, Warren, Ohio, for ITT Financial Services.

## MEMORANDUM OPINION

WILLIAM T. BODOH, Bankruptcy Judge.

This cause is before the Court upon the Motion of THORP DISCOUNT, INC., nka ITT FINANCIAL SERVICES ("ITT"), a secured creditor of the Debtors in this cause. ITT has moved the Court for an Order reopening this Chapter 13 proceeding and for other relief. Debtors' counsel was given until July 31, 1987, to file a Brief in response to the Motion, but to the date of this Order, there has been no response from Debtors' counsel.

On September 29, 1981, Debtors filed a Petition for Relief under Chapter 13 of Title 11. ITT (then THORP) was listed in the Schedules as a secured creditor to whom Debtors owed the principal sum of Eighteen Thousand, Five Hundred Eighty–Five & 30/100 Dollars ($18,585.30). The collateral for the obligation included a second mortgage on Debtors' real estate, a lien noted on the title of a 1978 Pontiac Bonneville, and a non-purchase money security interest in miscellaneous household goods. Debtors' Schedules valued the real estate at Thirty Thousand & 00/100 Dollars ($30,000.00), less a Ten Thousand & 00/100 Dollars ($10,000.00) homestead exemption provided by applicable Ohio law and subject to a first mortgage in the amount of Four Thousand, Six Hundred Eighty–Six & 25/100 Dollars ($4,686.25). The automobile was valued at Three Thousand, Seven Hundred Fifty & 00/100 Dollars ($3,750.00), and the household goods at One Thousand, One Hundred Seventy & 00/100 Dollars ($1,170.00). The ITT loan was originally consummated on October 7, 1980, in the principal amount of Nineteen

Thousand, Nine Hundred Eighty–Three & 02/100 Dollars ($19,983.02), with a total finance charge of Fifteen Thousand, Two Hundred Ninety–Six & 98/100 Dollars ($15,296.98), with the first payment of Four Hundred Twenty & 00/100 Dollars ($420.00) per month due on November 14, 1980, and the final payment of like amount due October 14, 1987. The contract rate of interest was 18 percent (18%).

On November 5, 1981, ITT filed its Proof of Claim, disclosing that the principal amount due on the date of filing the Petition was Nineteen Thousand, One Hundred Eighty–Four & 96/100 Dollars ($19,184.96) and that the collateral was valued at Twenty Thousand & 00/100 Dollars ($20,000.00). The Proof of Claim stated that ITT accepted the Plan but with a handwritten notation "only at Four Hundred Twenty & 00/100 Dollars ($420.00) per month." Debtors proposed a Plan which valued ITT's collateral at Thirty–Three Thousand, Seven Hundred Fifty & 00/100 Dollars ($33,750.00) and provided for payment of the allowed claim of Nineteen Thousand, One Hundred Eighty–Four & 96/100 Dollars ($19,184.96) at 100 percent (100%) of the outstanding principal amount, together with interest at the rate of 12 percent (12%) per year until the principal amount was paid. The Plan proposed to have the Trustee make monthly payments to ITT of Four Hundred Three & 00/100 Dollars ($403.00) per month for sixty (60) months, the term of the Chapter 13 Plan. On November 12, 1981, the Plan was confirmed as filed. Nothing in the Clerk's file suggests that ITT filed a written Objection to the Plan (other than the notation on the Proof of Claim) or that a representative of ITT appeared at the confirmation hearing to object to the proposed Plan or to the proposed rate of interest to be paid on the allowed secured claim of ITT. On July 29, 1986, the Trustee filed his Final Report and Account, disclosing that ITT had been paid the total amount of Nineteen Thousand, One Hundred Eighty–Four & 96/100 Dol-

lars ($19,184.96), the principal amount of its allowed claim, but that no interest, as provided for in the Plan, had been paid on the claim. On August 19, 1986, the Debtors were discharged.

On April 27, 1987, ITT filed its Motion to reopen the case. Notice of the hearing on the Motion, set for May 28, 1987, was given to Debtors and to Debtors' counsel. On May 29, 1987, the Court entered an Order sustaining ITT's Motion to reopen the case, and on June 8, 1987, an Order amending the Court's May 29, 1987 Order was entered, noting that the resolution of ITT's liens and the ultimate quieting of title in this case required further consideration of the Court.

## DISCUSSION

ITT asserts that the Debtors' Plan is ambiguous in its terms. As a result, ITT proposes an interpretation of the Plan which would allow it to retain its lien on the property until the claimed remaining outstanding balance is paid.

It should be noted at the outset that the Court deems the Plan to be contradictory, not ambiguous, in its terms. Since the Debtors did not object to ITT's Proof of Claim, its claim in the amount of Nineteen Thousand, One Hundred Eighty–Four & 96/100 dollars ($19,184.96) will be deemed allowed in that amount. On the one hand, the Plan provided that secured claims would be paid as allowed, which would obligate the Debtors to pay ITT the amount of Nineteen Thousand, One Hundred Eighty–Four & 96/100 Dollars ($19,184.96). The Plan also provided that ITT would receive a monthly payment of Four Hundred Three & 00/100 Dollars ($403.00) for sixty (60) months, plus interest at 12 percent (12%) per year. Under this provision, the Debtors would be obligated to pay ITT the amount of Twenty–Five Thousand, Two Hundred Twenty–Five & 49/100 Dollars ($25,225.49).[1] Thus, the Court is called

---

1. Standard amortization tables reveal that the periodic payment necessary to amortize the allowed claim of Nineteen Thousand, One Hundred Eighty–Four & 00/100 Dollars ($19,184.00) at 12 percent (12%) interest for sixty (60) months would be Four Hundred Twenty–Six & 76/100 Dollars ($426.76), with a final payment

upon to determine the relative rights of the Debtors and a secured creditor when a confirmed and completed Plan is contradictory in its treatment of that secured creditor.

11 U.S.C. Sec. 1327(a) provides:

(a) The provisions of a confirmed Plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the Plan, and whether or not such creditor has objected to, has accepted, or has rejected the Plan.

The question before us is what the provisions of the Plan are in this particular case. We believe, under the circumstances found here, that a contradictory Plan of Reorganization which has been confirmed and subsequently completed by the Debtor should be presumed to have been properly administered as to a particular creditor if that creditor's allowed claim was fully paid in the Plan. In this particular case, ITT was paid its allowed secured claim of Nineteen Thousand, One Hundred Eighty–Four & 96/100 Dollars ($19,184.96) which the Court deems to be the controlling provision in the Plan.[2] ITT knew the provisions of the Plan and did not object to the Plan's confirmation nor to the payments made to it by the Trustee during the five years the Plan was in effect. This Court largely subscribes to the position taken by the Bankruptcy Court in *In re Hebert,* 61 B.R. 44 (Bankr.W.D.La. 1986):

In this case, the [claimant] had notice of the provisions of the debtor's Plan, and failed to raise any objection to its treatment under the Plan. Had such an objection been raised, the payments to the [claimant] could have been raised to include interest, *or* the Court could have ordered that the [claimant] would retain its lien to the extent its claim was underpaid. However, this Court believes that the [claimant's] failure to object to its treatment under the Plan in this case

constitutes 'agreement' to such treatment under Sec. 1322(a)(2).... Absent affirmative action at or prior to the confirmation hearing, the [claimant], like any other creditor, has effectively waived any right to object to its treatment under the Plan.

*Id.* at 46, 47. To the extent ITT's Motion suggests that the handwriting on its Proof of Claim constitutes a rejection of the Plan, under the facts here found, the Motion is overruled. The Court assumes claimants will act in a timely manner to protect their interests. Here, ITT waited almost five and one half (5½) years after confirmation and more than eight (8) months after the Debtors were discharged to allege that it was not being paid the amount to which it believed it was entitled. The Court's decision that the Plan was fulfilled as administered compels the further determination that the Debtors' property is free and clear of ITT's lien pursuant to 11 U.S.C. Sec. 1327(b), (c). Thus, ITT's Motion to enforce its lien outside the Plan shall be overruled.

ITT also claims that it is entitled to post-Petition interest on its oversecured claim. It is beyond dispute that current law requires that secured claimants be paid interest on the amount of its allowed secured claim at the lower of the contract or current market rate. *In re Colegrove,* 771 F.2d 119, (6th Cir.1985). There is no indication that the Sixth Circuit intended *Colegrove* to be retroactively applied. This Court believes that an Order to upset a 1981 confirmed Plan pursuant to a 1985 decision would be grossly inequitable to the parties who relied on the Plan's confirmation. ITT's Motion for post-Petition interest shall be overruled.

The Movant's final alternative ground for relief asserts that it failed to receive the amount guaranteed under the Plan. Based on the Court's earlier determination in this Opinion, this contention is also overruled. Pursuant to the controlling plan

of Four Hundred Twenty–Six & 65/100 ($426.65).

**2.** In its Brief in Support of its Motion to Reopen, ITT alleges that it received Nineteen Thousand, Nine Hundred Forty–Six & 03/100

Dollars ($19,946.03). Regardless, the amount for which the claim of ITT was allowed as secured was paid in full, whether we use the Trustee's figure or the higher figure claimed by ITT.

provision, ITT was paid in full on its allowed secured claim. Therefore, the Movant's final alternative ground for relief shall also be overruled.

An appropriate Order consistent with this Opinion shall be issued.