In re John T. and Gail M. WOLF, Debtors.

LEE SERVICING COMPANY, Plaintiff,

v.

John T. WOLF, Gail M. Wolf and Robert M. Wood, Trustee, Defendants.

Bankruptcy No. 92–33397.
Adv. No. 93–3245.

United States Bankruptcy Court,
D. New Jersey.

Dec. 10, 1993.

Nadine Alexander, Charles M. Forman & Associates, Newark, NJ, for plaintiff.

Peter A. Berman, Matawan, NJ, for debtors.

Peter J. Broege, Wood, Broege, Neumann & Fischer, for trustee.

*MEMORANDUM OPINION*

STEPHEN A. STRIPP, Bankruptcy Judge.

This constitutes the court's decision on the parties' cross-motions for summary judgment. The plaintiff in this adversary proceeding, Lee Servicing Co., filed a five-count complaint against the debtors and the chapter 13 trustee to determine the extent and validity of its lien. Lee Servicing held a second mortgage on the debtors' primary residence. Lee Servicing maintains that the debtors' confirmed chapter 13 plan providing for cram down and cancellation of Lee Servicing's lien was improper or ineffective to avoid the lien. Lee Servicing filed a motion for summary judgment determining that it retains a valid lien and modifying the plan to provide for payment of its claim. The debtors filed a cross-motion for summary judgment dismissing the complaint of Lee Servicing and directing Lee Servicing, Alliance Funding and Princeton Bank and Trust Co. to cancel their mortgage and assignments on the record. The trustee also filed a cross-motion for summary judgment dismissing the complaint or alternatively, dismissing the complaint against the trustee. This court has jurisdiction under 28 U.S.C. §§ 1334(b), 151 and 157(b)(1). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (K), (L) and (O). These motions raise the following issues: (1) the effect on a secured creditor's lien of a confirmed chapter 13 plan providing for the cram down and cancellation of such lien; (2) whether a second mortgagee's lien can be modified under § 1322(b)(2); and (3) whether a lien can be modified by a chapter 13 plan without conducting an adversary proceeding to determine the validity of such lien.

### I. STATEMENT OF FACTS

The essential facts of this matter are undisputed. The debtors filed a voluntary petition under chapter 13 of title 11, United States Code ("Bankruptcy Code" or "Code") on May 29, 1992. The debtors' petition listed their residence at 183 Carr Avenue, Keansburg, NJ ("the property") with a market value of $30,000.[1] First Town Mortgage Corporation ("First Town"), which is not a party to this action, holds a first mortgage on the property for approximately $30,000.[2] Lee Servicing, the plaintiff, holds a second mortgage on the property for approximately $28,000.[3]

The plan proposed to cure the default on the first mortgage by paying First Town $4,140. at the rate of $120. per month. The plan provided that Lee Servicing's second mortgage would "be crammed down to zero and cancelled on the record".

This treatment of Lee Servicing's claim was stated in the Notice of Commencement of Case Under Chapter 13 of the Bankruptcy Code, Meeting of Creditors, and Fixing of Dates ("the Notice"), which was issued on June 25, 1992 and alerted creditors that the meeting of creditors would be held on July 10, 1992, the deadline to file a proof of claim was October 8, 1992 and that the confirmation hearing would be held on October 27, 1992. The Notice also included the following provisions:

1. The debtors did not file an appraisal of the property. The debtors' testified at the meeting of creditors under Code section 341 that their valuation of $30,000.00 was based on comparable sales in the area. See Statement of Facts and Law in Support of Defendant's Cross Motion for Summary Judgment, Robert M. Wood, Trustee at p. 2.

2. On December 18, 1992, First Town filed a proof of claim for $28,900.94 and an affidavit of arrears for $5,668.26 due as of November 1, 1991.

3. Lee Servicing filed a proof of claim on September 23, 1992 for $27,987.14 as of January 8, 1992 and an affidavit of arrears of $2,438.26.

Lee Servicing Company holds the mortgage as servicing agent after numerous assignments of the mortgage. The debtors' borrowed $25,000.00 on June 3, 1991 from First Commercial Mortgage Corporation secured by a second mortgage on the property. On June 3, 1991 the mortgage was assigned to Alliance Funding Company. On June 4, 1991, the mortgage was then assigned to Princeton Bank and Trust Co., N.A. Lee Servicing Company is the servicing agent for Princeton Bank and Trust Company, N.A.

| NAME | COLLATERAL | MO. PAYMENT | DEFAULT TO CURE |
|------|-----------|-------------|-----------------|
| FIRST TOWN | RESIDENCE | $120.00 | $4,140.00 |

THE 2ND MTG. TO LEE SERVICING SHALL BE CRAMMED DOWN TO ZERO & CANCELLED ON THE RECORD. THE JUDGEMENT LIEN OF NJ NATURAL GAS, DOCKET # UJ–116610–91, KEANSBURG M.U.A. FOR $519.00 SHALL BE PAID THROUGH THE TRUSTEE.
PAYMENTS: $120.00 TO TRUSTEE MONTHLY; TO UNSECURED CREDITORS— 0% THE PLAN WILL BE COMPLETED IN 43 MONTHS.

---

Lee Servicing and their law firm timely received the Notice.

On September 23, 1992, Lee Servicing filed an objection to confirmation. The objection stated:

> Lee Servicing Corp. . . . hereby objects to the confirmation of the Debtors' proposed Chapter 13 in the event the debtors have failed to make their regular monthly payments to the Secured Creditor outside their Chapter 13 Plan.

> In the event the Debtor cures the aforesaid payments due outside their Chapter 13 Plan prior to the Confirmation Hearing, the Undersigned will not appear at the Confirmation Hearing and the aforesaid objection should be deemed waived.

Notice of Objection by Attorneys for Secured Creditor.

The court held a confirmation hearing on October 27, 1992 and entered an order on November 16, 1992 confirming the plan. Lee Servicing did not appear at the confirmation hearing and, therefore, its objection to confirmation was not considered at the hearing. The order confirming the plan was not appealed and is therefore final.

The confirmed chapter 13 plan provides for payments of $120. per month to the trustee for 43 months. The plan further provides that "Holders of allowed secured claims shall retain the liens securing such claims and shall be paid as follows: The arrearage to First Town in the amount of $4,140. shall be cured by payment to the Trustee. The 2nd mortgage to Lee Servicing shall be crammed down to zero & cancelled on the record." The unsecured creditors (which would include Lee Servicing by virtue of the cram down of its mortgage) receive no payment under the plan. After confirmation, the debtors commenced state court proceedings to discharge Lee Servicing's mortgage.

On April 16, 1993, Lee Servicing filed a five-count complaint in this court to determine the extent and validity of its lien, alleging on various grounds that the plan was ineffective to modify its lien. On July 21, 1993 Lee Servicing moved for summary judgment determining that its lien remain valid. The debtors filed a cross-motion for summary judgment dismissing the complaint of Lee Servicing and directing Lee Servicing, Alliance Funding and Princeton Bank and Trust Co. to cancel their mortgage and assignments on the record. The trustee also filed a cross-motion for summary judgment dismissing the complaint or alternatively, dismissing the complaint against the trustee. For the following reasons, the plaintiff's motion for summary judgment is denied, the defendants' cross-motions for summary judgment are granted in part and denied in part, and the plaintiff's complaint is dismissed.

## II. CONCLUSIONS OF LAW

A motion for summary judgment is granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). Federal Rule of Civil Procedure 56(c) is incorporated by reference in the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"). FED.R.BANKR.P. 7056. On the motions before the court, none of the parties argue that there is a genuine issue as to any material fact. Therefore, the court must only determine which party or parties are entitled to judgment as a matter of law.

### A. Effect of Confirmed Plan

The first issue is the effect of confirmation on Lee Servicing's claim and lien. Code section 1327 provides:

The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

11 U.S.C. § 1327(a). "Under § 1327, a confirmation order is res judicata as to all issues decided *or which could have been decided* at the hearing on confirmation." *In re Szostek*, 886 F.2d 1405, 1408 (3d Cir.1989) (emphasis added). The plan provided for cram down and cancellation of Lee Servicing's lien based on the value of the property which was decided at confirmation.[4] These plan provisions bind Lee Servicing.

■ To grant the relief requested by Lee Servicing, the court would effectively have to revoke the confirmed plan.[5] Code section 1330 permits revocation of an order of confirmation only "if such order was procured by fraud." 11 U.S.C. § 1330. The plaintiff has not alleged that the debtors procured the confirmation order by fraud. Once a plan is confirmed it is final under Code section 1327 and the order of confirmation may only be challenged as procured by fraud under

§ 1330(a). *See In re Szostek*, 886 F.2d at 1413.

This court holds that the plaintiff is bound by the terms of the confirmed plan and that the plan is res judicata as to all issues that could have been raised at confirmation. *Id.; see also Midlantic National Bank v. Kouterick (In re Kouterick)*, 161 B.R. 755 (Bankr. D.N.J.1993). However, because the plaintiff has made numerous allegations regarding the plan's compliance with the Code, the proper procedure for cancelling liens, and the scope of this court's obligations when confirming a chapter 13 plan, the court will explain why confirmation was proper under the circumstances of this case.

**B. Modification of Lee Servicing's Lien**

■ Lee Servicing argues that its claim was either partially secured or fully secured and, therefore, cram down and cancellation of its lien was impermissible under Code section 1322(b)(2). Code section 1322 permits the modification of the rights of secured creditors except "a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2). The provisions of § 1322 are mandatory prerequisites to confirmation.[6]

---

**4.** "Cram down" is a term of art in bankruptcy cases. In chapter 11 cases, it refers to confirmation of a plan under Code section 1129(b) over the dissent of one or more impaired classes. In chapter 13 cases, it refers to elimination of the unsecured portion of a lien under Code Sections 506(a), 1322(b)(2) and 1325(a)(5). Thus, "cram down to zero" means elimination of the lien on the grounds that in light of the value of the property, the lien is worthless.

**5.** The fourth count of the complaint requests that the court modify the plan to provide for payment of the plaintiff's claim because the claim is deemed "allowed" absent objections and, therefore, the plan must provide for payment of the claim. The relief requested by the plaintiff is not a proper modification of a confirmed plan. "Upon request of the debtor, the trustee, or the holder of an allowed unsecured claim," a plan may be modified under Code section 1329, to:

(1) increase or reduce payments on claims of a particular class provided for by the plan;
(2) extend or reduce time for such payments; or
(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan, to the extent necessary to take account of any payment of such claim other than under the plan.

**6.** The plaintiff maintains that they are not bound by the confirmed plan because it was improperly confirmed. Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment as to Extent and Validity of Lien, p. 6. Revocation of a Chapter 13 plan for failure to comply with Code section 1322 may be a valid ground for challenging a confirmation order on appeal. *See In re Szostek*, 886 F.2d 1405, 1413–14 (3d Cir. 1989) (holding that a confirmed plan is a final order that may not be revoked for failure to comply with the discretionary provisions of § 1325 but *not addressing whether failure to*

11 U.S.C. § 1329(a). As discussed *infra*, Lee Servicing holds an unsecured claim. A proper modification would increase the payments to all the unsecured creditors, not just Lee Servicing. Lee Servicing is bound by the terms of the plan providing for no payments to the unsecured creditors.

In addition, to the extent that Lee Servicing seeks modification of the order confirming the plan, Lee Servicing filed no motion to alter or amend or reconsider the order of confirmation under Federal Rule of Civil Procedure 59(e) incorporated by reference in Bankruptcy Rule 9023. Such motion would have had to be made within 10 days after the entry of the confirmation order.

*In re Szostek*, 886 F.2d at 1411. Prior to the Supreme Court's opinion in *Nobelman v. American Savings Bank*, —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) and under the law applicable in this Circuit at the time of confirmation in this case, a chapter 13 debtor was permitted under Code sections 1322 and 506(a) to "cram down" a lien, i.e., bifurcate it into an unsecured portion and a secured portion based on the value of the collateral and void the unsecured portion of the lien. *See Sapos v. Provident Institution of Savings*, 967 F.2d 918, 925 (3d Cir.1992). Such bifurcation of a mortgagee's claim under Code section 506(a) was not considered a modification of "the rights of holders of secured claims under § 1322(b)(2)," subject to the limitation for interests secured only by the debtor's principal residence. *Sapos v. Provident Institution of Savings*, 967 F.2d at 925.

In this case, Lee Servicing's claim was completely unsecured because the first mortgagee's claim equalled or exceeded the value of the property. The petition listed the value of the subject property as $30,000. and the first mortgage debt as $30,000. There were no objections to the debtors' valuation of the property or the first mortgage. The court confirmed the plan, accepting the debtors' valuations of the property and of Lee Servicing's secured claim. Because Lee Servicing was completely unsecured by any value above the amount due on the first mortgage, the debtors were not precluded from modifying the rights of Lee Servicing under Code section 1322(b)(2) and, therefore, did not have to provide for payment of Lee Servicing's claim or retention of the lien in the plan.

 Lee Servicing is bound by the debtors' valuation of the property and terms of the confirmation order because Lee Servicing did not file a timely objection to valuation nor appear at the confirmation hearing. *See In re Szostek*, 886 F.2d at 1414. The plaintiff

filed an objection to confirmation, but did not object to the cram down of the creditor's lien to zero and cancellation of the lien. Rather, the objection addressed the debtors' monthly payments outside their chapter 13 Plan. Moreover, the plaintiff's objection specifically stated that if the plaintiff did not appear at confirmation, then the objection could be deemed waived. Even if this objection could be construed as an objection to the cram down of the creditor's claim and cancellation of its lien, the court holds that Lee Servicing waived its objection by failing to appear at the chapter 13 confirmation hearing. Moreover, even if the objection had not expressly stated that it should be considered waived if Lee Servicing failed to appear at the confirmation hearing, this court holds that a party who wishes to prosecute an objection to confirmation must appear at the confirmation hearing or the objection is deemed waived or abandoned.[7]

Lee Servicing also alleges that even absent any objections to valuation, the court and/or the trustee must raise the issue and a valuation hearing must be held. Record at 16–22. Discussing the duty of the court and the trustee to ensure that a chapter 13 plan meets the requirements of the Bankruptcy Code, the Third Circuit stated that:

> While we do not understate the importance of the obligation of the bankruptcy court or the trustee to determine that a plan complies with the appropriate sections of the Bankruptcy Code prior to confirmation of the plan, we nonetheless recognize that the affirmative obligation to object to the ... plan rested with [the creditor], not with the bankruptcy court or the trustee.... [C]reditors are obligated to take an active role in protecting their claims ... Otherwise, Rules 3017 and 3020(b), which set a deadline for filing objections to a plan, would have no substance.

comply with the mandatory provisions of § 1322 would be a proper grounds for revocation). However, no appeal was filed.

7. *See e.g. In re Harris*, 62 B.R. 391, nt. 1 (Bankr. E.D.Mich.1986) ("Technically, the objecting creditor may be deemed to have abandoned its objection [by failing to appear at the confirma-

tion hearing.]"); *Eastern Wrecker Sales, Inc. v. Parker (In re Parker)*, 49 B.R. 61, 62 (Bankr. E.D.Va.1985) (Plaintiff's objection to confirmation of Chapter 13 plan overruled for failure to prosecute because the plaintiff failed to appear at the confirmation hearing.).

*In re Szostek,* 886 F.2d at 1414. The bankruptcy court is required only to ensure that a chapter 13 plan meets the minimal requirements of § 1322(a). *Id.* In this case, accepting the debtors' valuation of the property at $30,000, Lee Servicing had an unsecured claim which the plan could permissibly modify without violating the requirements of § 1322. Contrary to the plaintiff's arguments, the court is not required to raise sua sponte objections to a debtor's valuation of his or her assets and hold a separate valuation hearing. The value of a creditor's allowed secured claim can be determined at a confirmation hearing. 11 U.S.C. § 506(a) ("Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and *in conjunction with any hearing* on such disposition or use or *on a plan affecting such creditor's interest.*") (emphasis added). Absent any objections, neither the court nor the trustee had any reason or duty to question the debtors' valuation of the subject property at $30,000. The plan complied with the provisions of Code section 1322(a) and, therefore, the court properly confirmed the plan.

■ The plaintiff also argues that the Supreme Court's recent decision in *Nobelman v. American Savings Bank,* — U.S. —, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) applies retroactively to the confirmation of the debtors' plan and, therefore, the plan could not modify Lee Servicing's claim or lien. This court confirmed the chapter 13 plan based on the then current law of the Third Circuit allowing cram down and lien stripping in chapter 13 cases. *Sapos v. Provident Institution of Savings,* 967 F.2d at 925. On June 1, 1993 the United States Supreme Court decided *Nobelman,* holding that Code section 1322(b)(2) prohibits the bifurcation of a home mortgagee's undersecured claim into an unsecured claim and a secured claim where the only security for the claim is the mortgage. The Supreme Court did not hold that the *Nobelman* decision was to be applied retroactively.

The Supreme Court has held that "when the Court has applied a rule of law to the litigants in one case it must do so with respect to all others *not barred by procedural requirements or res judicata." James B. Beam Distilling Co. v. Georgia,* — U.S. —, —, 111 S.Ct. 2439, 2447, 115 L.Ed.2d 481 (1991) (emphasis added). The Supreme Court explained that retroactivity is limited by finality and that "once suit is barred by res judicata or by statutes of limitation or repose, a new rule cannot reopen the door already closed." *Id.,* — U.S. at —, 111 S.Ct. at 2446. The door has surely closed on Lee Servicing and has been forever locked by res judicata. The court holds that the *Nobelman* decision does not apply retroactively where a final order of confirmation has previously approved lien-stripping under a plan.[8]

### C. Procedure to Modify Rights of Secured Creditor

Having concluded that the debtors could properly modify the plaintiff's secured claim and cancel its lien under the relevant sections of the Code, the final issue is whether the hearing on confirmation of the debtors' plan was a proper procedure for modifying the plaintiff's rights. Lee Servicing maintains that absent objections to a secured claim, the secured claim is allowed and, therefore, the plan must provide for payment of its claim. Lee Servicing alleges that the provisions of a plan cannot modify the rights of a secured creditor absent an adversary proceeding or hearing to disallow the creditor's claim. Lee Servicing also argues that absent an adversary proceeding, the modification of its claim by the plan violated the plaintiff's due process rights.

■ Generally, liens pass through bankruptcy unaffected unless some action is taken by the debtor to modify the lien. *Estate of Lellock v. Prudential Insurance Co. of America,* 811 F.2d 186, 189 (3d Cir.1987). A secured creditor may choose not to participate in the bankruptcy process, not to file a proof of claim, and look solely to its lien for satisfaction. *Id.* ("[V]alid liens that have

---

8. The time for appeal of the confirmation order has passed. If Lee Servicing had raised retroactivity in the context of a timely appeal from the order of confirmation, *Nobelman* would have applied under *James B. Beam Distilling Company.*

not been disallowed or avoided survive the bankruptcy discharge of the underlying debt.").

■ Consistent with this general principle, a chapter 13 plan must address the creditor's lien or it will be unaffected by the bankruptcy proceeding. See *In re Glow*, 111 B.R. 209 (Bankr.N.D.Ind.1990) (Court held that although in personam liability to mortgagee was discharged upon completion of chapter 13 plan, liens passed through bankruptcy unaffected where they were not voided by a provision of the debtor's plan.); *In re Thomas*, 91 B.R. 117, 124 (N.D.Ala.1988) (Debtors could have filed a proof of claim for secured creditor so secured creditor would be "provided for in their plan," but in the absence of proof of claim or provision in plan, secured creditor's lien unaffected by bankruptcy.), *aff'd*, 883 F.2d 991 (11th Cir.1989), *cert. denied*, 497 U.S. 1007, 110 S.Ct. 3245, 111 L.Ed.2d 756 (1990); *In re Sansone*, 99 B.R. 981 (Bankr.C.D.Cal.1989) (Lien survived bankruptcy process where debtors took no steps in the plan or otherwise to avoid the lien). Code section 1327, which sets forth the effects of confirmation of a chapter 13 plan on a creditor's liens, incorporates this principle. Upon confirmation:

> (a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.
>
> (b) Except as otherwise provided in the plan of the order confirming the plan, the confirmation of a plan vests all the property of the estate in the debtor.
>
> (c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

11 U.S.C. § 1327. Although under Code section 1327(a) a secured creditor is bound by the plan regardless of whether the creditor is provided for by the plan, this does not mean that a debtor can void or otherwise extinguish a creditor's lien without addressing the lien in the plan. See *In re Beard*, 112 B.R. 951, 954 (Bankr.N.D.Ind.1990) ("Even where confirmed without objection, a plan will not eliminate a lien simply by failing or refusing to acknowledge it or by calling the creditor unsecured.") (citing *In re Simmons*, 765 F.2d 547, 554–59 (5th Cir.1985)). Code section 1327(c) requires a plan to "provide for" a creditor in order for the plan to vest property in the debtor free and clear of ·the creditor's liens.

■ If a secured creditor is "provided for"[9] in the chapter 13 plan, upon confirmation the property of the estate will vest in the debtor free and clear of liens only to the extent not "otherwise provided in the plan."[10] In this case, however, the plan did not have to "otherwise provide" for the retention of Lee Servicing's lien because Lee Servicing was completely unsecured and did not hold an allowed secured claim. Therefore, upon confirmation the property vested in the debtors free and clear of Lee Servicing's lien.

■ An adversary proceeding is not required to modify a secured creditor's rights in chapter 13. The advisory committee notes to Bankruptcy Rule 3012 explain that "[a]n adversary proceeding is commenced when the validity, priority, or extent of a lien is at issue as prescribed by Rule 7001. That proceeding is relevant to the basis of the lien itself while valuation under Rule 3012 would be for the purposes indicated above." FED. R.BANKR.P. 3012 advisory committee's note.

■ Nor is a separate motion under Bankruptcy Rule 3012 necessary to modify a secured creditor's rights in chapter 13. Bankruptcy Rule 3012 provides that:

> The court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct.

---

**9.** 11 U.S.C. § 1325(a)(5).

**10.** 11 U.S.C. § 1327(c).

FED.R.BANKR.P. 3012. Bankruptcy Rule 3012 is permissive, not mandatory.[11] 5 Collier on Bankruptcy, ¶ 1327.01 (15th ed. 1989). The Rule provides a procedural mechanism to raise valuation issues in contexts not otherwise provided for by the Code.[12] *In re Pourtless,* 93 B.R. 23, 25 (Bankr.W.D.N.Y. 1988) ("[I]t is clear from the Code itself that a valuation hearing is anticipated as part and parcel of a confirmation hearing ... Bankruptcy Rule 3012 ... does address valuation issues, but it is intended only to provide a general procedure when a valuation determination may be important in a context not anticipated by the Code."). Bankruptcy Rule 3012 is an alternative avenue for a debtor, creditor or other party to raise the issue of the value of a secured creditor's claim. For example, in a chapter 13 case, a debtor could file a motion under Bankruptcy Rule 3012 as the procedural mechanism to void a lien under Code section 506(d) where a secured creditor has not filed a proof of a claim and the plan contemplates post-confirmation proceedings to determine value.[13] Where, however, a plan does propose to determine the value of secured claims, such valuation of secured claims for the purposes of § 506(a) is properly part of the confirmation proceeding and no separate motion under Bankruptcy Rule 3012 is required. *In re Fox,* 142 B.R. 206, 207–08 (Bankr.S.D.Ohio 1992); *In re Pourtless,* 93 B.R. 23, 25 (Bankr.W.D.N.Y. 1988).

 Finally, no separate objection to the allowance of a secured claim is required to modify a secured creditor's rights in a chapter 13 plan.[14] *See e.g. In re Demoff,* 109 B.R. 902 (Bankr.N.D.Ind.1989); *In re Calvert,* 907 F.2d 1069, 1072 (11th Cir.1990). Code section 506(a) permits bifurcation of a secured creditor's claim into an allowed unsecured claim and an allowed secured claim. 11 U.S.C. § 506(a). The chapter 13 plan and confirmation process determines the amount of the allowed secured claims and no separate proceeding for allowance is required. *Still v. Tennessee, Department of Revenue (In re Rogers),* 57 B.R. 170, 172 (Bankr. E.D.Tenn.1986).[15] This court holds that a

11. The Advisory Committee note further indicates the permissive nature of the Rule:

> The valuation of secured claims may become important in different contexts, e.g., to determine the issue of adequate protection under § 361, impairment under § 1124, or treatment of the claim in a plan pursuant to § 1129(b) of the Code. This rule *permits* the issue to be raised on motion by a party in interest. The secured creditor is entitled to notice of the hearing on the motion and the court may direct that others in the case also receive such notice.

FED.R.BANKR.P. 3012 advisory committee's note. (emphasis added)

12. This rule implements § 506(a) of the Code with respect to valuation of a secured claim in order to determine the extent to which it is secured and the extent to which it is unsecured. Valuation is important for various reasons in chapter 7, 9, 11 and 13 cases and *normally such valuation would arise within the context of the particular purpose for which it is necessary. The rule provides a general procedure when valuation may be important in the absence of a particular context.*

*In re Pourtless,* 93 B.R. 23 (Bankr.W.D.N.Y.1988) (emphasis added) (citing Bankruptcy Code Comment, 1988 Collier Pamphlet Edition).

13. For example, in *In re Lewis,* 875 F.2d 53 (3d Cir.1989), the secured creditor did not file a proof of claim until after confirmation of the debtor's Chapter 13 plan. Thereafter, the debtor moved for a determination under § 506(d) to avoid the creditor's lien to the extent it was unsecured. The Third Circuit held that absent a showing of prejudice, the debtor's motion under § 506(d) was not untimely regardless that it was filed seven months after confirmation of the plan.

14. Some courts require a debtor to object to a secured creditor's claim before reducing the amount of the creditor's claim in a plan. *See e.g. Sun Finance Company, Inc. v. Howard (In re Howard),* 972 F.2d 639, 642 (5th Cir.1992); *Fireman's Fund Mortgage Corp. v. Hobdy (In re Hobdy),* 130 B.R. 318 (9th Cir. BAP 1991); *In re Thomas,* 883 F.2d 991, 996–99 (11th cir. 1989), *cert. denied,* 497 U.S. 1007, 110 S.Ct. 3245, 111 L.Ed.2d 756 (1990). The purpose of the objection requirement is to put a secured creditor on notice that the amount or validity of its claim may be modified by the plan. *See Id.* The Third Circuit has no such requirement in Chapter 13 cases. Moreover, most courts hold that the debtor need only take some affirmative step to avoid a lien, whether by adversary proceeding, objection to claim, or a provision in the plan avoiding the lien. *See In re Glow,* 111 B.R. 209, 221 (Bankr.N.D.Ind.1990).

15. The court in *Still* explained:

> Generally a chapter 13 plan will fix the value of the collateral or provide for full payment of the secured debt. The plan may also provide that a claim filed as secured by treated as

debtor may modify a secured creditor's claim and cancel its lien to the extent permitted under Code section 506(a) and 1325 by so providing in a chapter 13 plan without an adversary proceeding, objection to claim or motion under Bankruptcy Rule 3012.[16]

■ Permitting a debtor to void a creditor's lien through a provision in a plan without filing an adversary proceeding or other motion does not violate the creditor's due process rights. A summary of the plan's terms in the notice to creditors puts the creditor on notice that its rights will be modified by the chapter 13 plan. That creditor has the opportunity to object or otherwise assert its rights at the confirmation hearing. This notice and opportunity to be heard at the confirmation hearing is sufficient to satisfy the requirements of due process.[17]

■ In this case, the Notice to the creditors, which Lee Servicing admittedly received, clearly indicated that the plan proposed to cram down Lee Servicing's lien to zero and cancel the lien of record. The debtors' statement of intention in the petition and their plan also indicated the modification of Lee Servicing's lien. The plaintiff had an opportunity to object to the treatment of its claim at the confirmation hearing. The debtors were not required to bring a separate adversary proceeding under these circumstances. In a case such as this, where the creditor is given ample notice of the modification of its lien and fails to object to the treatment of its lien at confirmation, the creditor is deemed to have accepted such modification. The court holds that notice to

unsecured, but in that situation the plan itself or with the schedules should reveal why the claim is in fact not allowable as secured under § 506(a). There should be something in the record to indicate that the collateral no longer exists or is worthless or is not worth enough to secured the debt in question. In any of these situations, confirmation of the plan necessarily determines the amount of the creditor's allowed secured claim. If the plan is confirmed and payments on the claim are completed, the secured debt is satisfied and the lien must be released ... The procedure for allowance or disallowance under § 506(d) is subsumed in the confirmation process. There may be a request for valuation under Rule 3012 as part of the confirmation process but a separate request for allowance or disallowance under § 506(d) is not needed. Confirmation must determine the amount in which a secured claim dealt with by the plan is an allowed secured claim under § 506(a).
*Id.*

16. Cases which have not allowed a plan provision to modify the rights of a secured creditor and instead required an adversary proceeding, objection or motion for valuation are distinguishable. Some of the cases involved a plan provision that merely treated a secured claim as unsecured and did not provide for payment of the allowed secured claim or an express provision canceling the creditor's lien. *See e.g. In re Simmons,* 765 F.2d 547 (5th Cir.1985) (Relying on pre-amendment Code section 506(d) requiring a debtor to file an objection to allowance before treating claim as unsecured). Other cases involved lack of notice to a secured creditor of the proposed treatment of its claim. *See e.g. Piedmont Trust Bank v. Linkous (In re Linkous),* 990 F.2d 160 (4th Cir.1993). Still others involved plans modifying rights of creditors who did not file proof of claims and were not "provided for"

in the Chapter 13 plan. *See e.g. In re Tarnow,* 749 F.2d 464 (7th Cir.1984) (also relying on Code section 506(d) prior to its amendment). All of these cases involved some factual distinction which rendered the plan provision modifying the secured creditor's rights alone insufficient. The plaintiff has not cited any cases where a court held that an express plan provision modifying a secured creditor's lien and claim of which the secured creditor had sufficient notice and ample opportunity to object but failed to object was ineffective to modify a secured creditor's lien and claim.

17. The plaintiff relies on the Fourth Circuit's decision in *Piedmont Trust Bank v. Linkous (In re Linkous),* 990 F.2d 160 (4th Cir.1993), where the court held that notice of a confirmation hearing was inadequate notice under due process to inform creditors that a valuation hearing would be held at confirmation and secured claims reevaluated pursuant to § 506(a). Although the court recognized that generally a confirmation order binds the debtor and all creditors under § 1327(a) and is res judicata, the court explained that notice is a fundamental requirement of due process in any final proceeding and if the notice to the creditor was inadequate the confirmation order would not be give final effect. Id. Reviewing the notice received by the creditor, the court stated that the notice failed to inform the creditor that the debtor intended to bifurcate and reclassify the creditor's claim into a secured portion and an unsecured portion. The court found that the creditor's due process rights were violated and, therefore, affirmed the district court's vacating the confirmation order with respect to this creditor's claims. This case is clearly distinguishable from *Linkous.* In this case, the creditor received ample notice of the proposed treatment of the creditor's security claim and lien.

a creditor which explicitly states the intention to cram down and cancel the creditor's lien is procedurally sufficient to modify the lien and does not violate due process.

■ The final procedural issue is at what point in the chapter 13 case should the lien be canceled. The plaintiff maintains that even if the lien is cancelled pursuant to the plan, the lien should remain in place until the debtors complete payment under the plan because if the case is dismissed then the lien will be reinstated under Code section 349(b)(1)(C). The court agrees. If the debtors do not complete all payments required by the plan, they are not entitled to have any liens cancelled of record, any more than they are entitled to a discharge under Code section 1328. Otherwise, the debtors might not have sufficient incentive to complete the plan payments after the liens are cancelled. The debtors may therefore apply for cancellation of *Lee Servicing's* mortgage when they complete their plan and obtain their discharge.

## III. CONCLUSION

For the foregoing reasons, the court concludes that the Lee Servicing is bound by the terms of the confirmed plan. The full amount of its claim will be treated as an unsecured claim and its lien cancelled of record in accordance with the plan when the plan is completed. The motion of Lee Servicing for summary judgment is denied. The trustee's cross-motion for summary judgment seeking dismissal of the plaintiff's complaint is granted. The debtors' cross-motion for summary judgment seeking dismissal of Lee Servicing's complaint is granted, but their request for an order directing Lee Servicing Company, Alliance Funding and Princeton Bank and Trust Co. to cancel their mortgage and assignments on the record is denied. Lee Servicing's complaint is dismissed.

The attorney for the debtors shall submit an order consistent with this opinion within 10 days under D.N.J.Bankr.Ct.R. 4(c).