**In re Jimmy Dearl RODGERS, Debtor.**

**Bankruptcy No. 93–14525.**

United States Bankruptcy Court,
E.D. Tennessee,
Southern Division.

April 14, 1995.

Grant, Konvalinka & Harrison, Chattanooga, TN, for debtor.

Grisham & Knight, Chattanooga, TN, for Continental Cas. Co.

### MEMORANDUM

R. THOMAS STINNETT, Bankruptcy Judge.

This Chapter 13 case is before the Court on the Motion to Vacate Order of Discharge and to Reconsider Payment of Claim filed on behalf of a creditor, Continental Casualty Company, d/b/a CNA Insurance Companies ("CNA"). For the reasons hereinafter stated, the motion shall be denied.

### I.

This voluntary Chapter 13 case [1] was filed on December 7, 1993. The proposed Chapter 13 Plan was filed the same date. The debtor, Jimmy Dearl Rodgers ("Debtor"), proposed to pay the Chapter 13 Trustee $50.00 semi-monthly until completion of the plan.[2] The proposed plan indicated that all holders of allowed unsecured claims would be paid in full in deferred cash payments; however, under the plan category designated for special claimants, the specific proposal as to CNA stated:

> "Claim disputed. Creditor to receive no distribution."

In the debtor's Statement of Financial Affairs, he lists a state court suit brought by CNA against him in the Chancery Court for Cheatham County, Tennessee. From oral argument on the pending motion, it is apparent that the suit was pending at the time this case was commenced. In the Schedule of Creditors Holding Unsecured Non-priority Claims, CNA is listed at an address c/o Renard A. Hirsch, Sr., in Nashville, Tennessee.

---

1. A similar Chapter 13 case was filed by William Randall Wilson. Other than a small difference in the weekly plan payments, the cases are nearly identical.

2. Wilson proposed to pay the Chapter 13 Trustee $25.00 per week.

Notice of the Chapter 13 case was sent to CNA at the above address. CNA does not contend that Mr. Hirsch did not receive or was not authorized to receive such notice on behalf of CNA. Indeed, Mr. Hirsch, an attorney, subsequently filed a proof of claim on behalf of CNA.

The notice indicated the meeting of creditors would be held on January 19, 1994, and the last day to file proofs of claims would be April 19, 1994. The notice sent to CNA also included the following:

> A hearing on confirmation of the plan will be held if necessary, at a time & date announced at the meeting of creditors. No additional notice will be provided.... The creditors must file any objection to confirmation in writing at or before the first date and hour set for the meeting of creditors. All creditors are to be paid 100% of their claims as allowed.... The manner in which your debt was listed by the debtor is shown below. The plan summary is provided by the trustee for convenience only and the trustee disclaims the accuracy thereof. Creditors should examine the plan on file with the clerk's office to determine the actual treatment of claims under the plan.

The following statement appears at the bottom of the notice to CNA:

> The plan proposes payments to the trustee of $50.00 semi-monthly. This claim was scheduled as unsecured. The debtor proposes to settle your debt for 100%. The list of debts contained the following remarks or comments about this claim—
>
> Notice of filing/To receive no distribution.
>> Disputed.

### II.

The meeting of creditors was held on January 19, 1994, as scheduled. No one attended the meeting on behalf of CNA, and there were no objections to confirmation. Accord-

ingly, the debtor's plan was confirmed as of January 19, 1994.[3]

As previously indicated, a proof of claim was filed on behalf of CNA. The claim was filed four days prior to the deadline for filing proofs of claim. The proof of claim is in the amount of $338,746.20.

On September 13, 1994, the Chapter 13 Trustee filed his Final Report indicating that all payments required under the plan had been concluded as of August 5, 1994.[4] Likewise, on September 13, 1994, an order was entered discharging the debtor from all debts provided for by the plan.[5] The pending motion was filed December 5, 1994.

### III.

█ Ordinarily, once a Chapter 13 plan has been confirmed, a creditor may not raise an issue that could have been raised by an objection to confirmation. The confirmed plan is binding on the creditor even if the plan did not meet one of the requirements for confirmation. 11 U.S.C. § 1327(a); *In re Szostek*, 886 F.2d 1405, 19 Bankr.Ct.Dec. 1520, 21 Collier Bankr.Cas.2d 889 (3rd Cir. 1989); *Los Angeles Title & Trust Deed Co. v. Risser (In re Risser)*, 22 B.R. 868 (Bankr. S.D.Cal.1982); 2 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 6–9 (2nd ed. 1994).

An exception to this general rule exists in the event the creditor would be denied due process for lack of notice. *United States v. Cardinal Supply, Inc.*, 916 F.2d 1087 (6th Cir.1990). The contention of CNA is that the notice it received was inadequate and that it has been denied due process of law as a result. No plan would be binding on CNA if the confirmation process were to violate CNA's right to due process. U.S. CONST. amend. V; *Piedmont Trust Bank v. Linkous (In re Linkous)*, 990 F.2d 160, 28 Collier Bankr.Cas.2d 1139 (4th Cir.1993); *In re Intaco of Puerto Rico, Inc.*, 494 F.2d 94 (1st Cir.1974).

---

**3.** The plan of Wilson was modified prior to confirmation to provide payments of $95.00 per week. With this modification, his plan was also confirmed. 11 U.S.C. § 1323.

**4.** The Final Report in the Wilson case was filed July 11, 1994, indicating the plan had been concluded as of June 3, 1994.

**5.** Wilson was discharged by order entered July 11, 1994.

■ While the notice to CNA may not have been a model of clarity, it was certainly adequate to apprise CNA, or any prudent person exercising reasonable diligence, about the specific treatment proposed as to CNA. Although the notice indicates that the debt will be settled for 100%, the notice very clearly states about "this claim" that it is "to receive no distribution." It is clear that the debtor "disputed" any claim of CNA and that, because he owed nothing to CNA, CNA would receive 100% of that to which it was entitled.

Obviously, CNA disputes the debtor's contention that it is owed nothing. As indicated, CNA has filed a substantial proof of claim. In fact, if the claim of CNA were to be allowed as filed, the debt alone would have exceeded the permissible limitations on Chapter 13.[6]

The debtor's plan could not have been confirmed if CNA had lodged a timely objection, assuming CNA's claim were to have been allowed as filed or allowed notwithstanding any objection that may have been filed by the debtor. The debtor could not have been a debtor under Chapter 13. 11 U.S.C. § 109(e). Certainly, the plan would not have been feasible. 11 U.S.C. § 1325(a)(6). If CNA's claim were allowed in any amount, the plan may have classified it improperly. 11 U.S.C. § 1322(a)(3). Furthermore, this case may have been commenced in the wrong district.[7] 28 U.S.C. § 1408. Finally, under a proper objection and proof, the court may have concluded that the plan was not proposed in good faith. 11 U.S.C. § 1325(a)(3).

Although CNA could have raised any of these matters in a timely objection to confirmation, it chose not to do so. Having concluded that the notice to CNA was sufficient to apprise it of the treatment it could expect under debtor's proposed plan, the court must conclude that the plan, as confirmed, is binding upon the debtor and CNA. 11 U.S.C. § 1327. CNA is deemed to have waived its objections to the plan. *In re Davis*, 160 B.R.

577 (Bankr.E.D.Tenn.1993); *In re Lindgren*, 85 B.R. 447 (Bankr.N.D.Ohio 1988).

■ CNA also contends that the notice did not adequately warn it of the procedure for protecting its rights. Granted, the effect of the confirmation process was to disallow CNA's claim on the merits. Consideration of a claim on the merits usually involves a separate procedure. *See* FED.R.BANKR.P. 3007. CNA contends the notice should have warned it that the validity of its claim would be determined as part of the confirmation process. Thus, argues CNA, without this explicit warning in the notice, it did not have a meaningful opportunity to respond. If the court were to accept this argument, then the court could not hold that the confirmed plan is binding on CNA because that would violate CNA's due process rights. U.S. CONST. amend. V; *Piedmont Trust Bank v. Linkous (In re Linkous)*, 990 F.2d 160, 28 Collier Bankr.Cas.2d 1139 (4th Cir.1993); *see also Archer v. Macomb County Bank*, 853 F.2d 497, 19 Collier Bankr.Cas.2d 1279 (6th Cir. 1988); *Drabkin v. Midland–Ross Corp. (In re Auto–Train Corp.)*, 810 F.2d 270 (D.C.Cir. 1987).

If the notice of how the plan proposed to treat CNA's claim was adequate, as the court has held, then a further procedural "warning" was unnecessary. It was the plan—not some other procedure—that openly proposed no distribution to CNA. The law is not clear as to how much of the procedure for dealing with claims can be subsumed in the confirmation process. 2 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 6–10 (2nd ed. 1994). The obvious and common sense response would have been to file an objection to confirmation. If CNA had objected under § 1325(a)(1), the court no doubt would have resolved the problem in CNA's favor. 11 U.S.C. § 1325(a)(1) & § 502(a).

The question is whether CNA can raise the issue now, after confirmation of the plan. A creditor must take responsibility for objecting to a plan when it receives notice that the

---

**6.** This case was filed prior to the enactment of the Bankruptcy Reform Act of 1994, which increased these limits. Even under the 1994 Act, the limits were exceeded by the CNA claim.

**7.** The debtor lists his address as Route 5, Box 485, Centre, Alabama. Mr. Wilson lists his address in this district.

plan condemns its unsecured claim to non-payment while proposing to pay other unsecured claims. The notice to creditors cannot be expanded into a treatise on bankruptcy procedure. In most situations the notice will be sufficient if it allows the creditor to determine how the plan proposes to maltreat its claim; that should alert the creditor to object to confirmation. *In re Basham*, 167 B.R. 903 (Bankr.W.D.Mo.1994); *Lee Servicing Co. v. Wolf (In re Wolf)*, 162 B.R. 98, 30 Collier Bankr.Cas.2d 730 (Bankr.D.N.J.1993); *In re Haynes*, 107 B.R. 83 (Bankr.E.D.Va.1989); *Lawrence Tractor Co. v. Gregory (In re Gregory)*, 705 F.2d 1118, 10 Bankr.Ct.Dec. 1073, 8 Collier Bankr.Cas.2d 605 (9th Cir. 1983); *In re Hogue*, 78 B.R. 867 (Bankr. S.D.Ohio 1987) (insufficient notice). Again, the notice to CNA in this case was sufficient.

In this case, CNA has failed to demonstrate how it is prejudiced (as opposed to a Chapter 7 liquidation, for example). CNA does not even contend that its claim would have been non-dischargeable in a Chapter 7 liquidation. It is obvious that debtor's counsel fashioned a Chapter 13 plan to deal with a unique set of circumstances.

The debtor and his counsel undertook from the beginning of this case to test the flexibility afforded a Chapter 13 Plan and the zeal with which those limits may be approached. Because CNA did not timely respond, pursuant to the doctrine of *res judicata*, the Court is unable to determine the good faith of the debtor or his counsel.

By this opinion, the court does not intend to sanction abuse of the confirmation process by debtors or their lawyers. The creditor must receive notice of how the proposed plan deals with its claim. Furthermore, other statutes and rules discourage abusive tactics by debtors or their lawyers. 11 U.S.C. § 1330(a); 11 U.S.C. § 329; Fed.R.Bank.P. 2016(b); 11 U.S.C. § 1307(c); Fed. R.Bankr.P. 9011; CODE OF PROFESSIONAL RESPONSIBILITY Canon 7, DR 7–101 & 7–102, EC 7–3—7–5; *In re Powers*, 135 B.R. 980 (Bankr.C.D.Cal.1991) (post-confirmation dismissal for bad faith & sanctions under Rule 9011).

IV.

This Memorandum constitutes findings of fact and conclusions of law as required by Fed.R.Bankr.P. 7052. An order will be entered denying the motion of CNA.

***ORDER***

For the reasons stated in a Memorandum Opinion filed contemporaneously herewith,

It is ORDERED that the Motion of Continental Casualty Co. to vacate order of discharge and to reconsider payment of claim is denied.