**In re Jimmy Doyle HUDSON and Peggy Lee Hudson, Debtors.**

**No. GG 99–05365.**

United States Bankruptcy Court, W.D. Michigan.

March 30, 2001.

---

David C. Andersen, Grand Rapids, Michigan, for Jimmy Doyle Hudson and Peggy Lee Hudson.

Thomas VanHattum, Grand Rapids, Michigan, for Bank One.

Timothy F. Johnson, Grand Rapids, Michigan, for Raymond B. Johnson, Chapter 13 Trustee.

Brett N. Rodgers, Grand Rapids, Michigan, Chapter 13 Trustee.

Steven J. Carpenter, Grand Rapids, Michigan, for Amicus Debtors' Bar of West Michigan.

*OPINION REGARDING BINDING EFFECT OF CONFIRMED CHAPTER 13 PLAN UPON SECURED CLAIM HOLDER*

JAMES D. GREGG, Chief Judge.

## I.

### *ISSUE*

Does the filing of a secured claim overcome contrary provisions contained in a confirmed chapter 13 plan?

## II.

### *JURISDICTION*

The court has jurisdiction over this bankruptcy case. 28 U.S.C. § 1334. The case and all related proceedings have been referred to this court for decision. 28 U.S.C. § 157(a) and L.R. 83.2(a) (W.D. Mich.). This contested matter is a core proceeding because it pertains to allowance or disallowance of a secured creditor's claim, 28 U.S.C. § 157(b)(2)(B), the effect of confirmation of a plan, 28 U.S.C. § 157(b)(2)(L), and the adjustment of a debtor-creditor relationship, 28 U.S.C. § 157(b)(2)(O).

## III.

### *FACTS AND PROCEDURAL BACKGROUND*

On June 30, 1999, Jimmy Doyle Hudson and Peggy Lee Hudson, the "Debtors," filed their voluntary petition under chapter 13 of the Bankruptcy Code.[1] In their Schedule D, the Debtors listed Bank One, the "Bank," as holding a claim secured by an interest in a 1995 Intrepid automobile.

When the case was commenced, the Debtors filed a Chapter 13 Plan. The plan listed the Bank as a secured creditor holding a secured claim in the amount of $8,000 to be paid at $120 per month. The plan provided the Bank would retain its lien on the automobile and any claim amount in excess of $8,000 would be treated as unsecured. Interest to be paid on the secured portion of the Bank's claim was stated as "13% or contract rate, whichever is less."

On July 13, 1999, a Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors & Deadlines, "Notice," was served upon parties in interest, including the Bank. The Notice informed parties in interest that the confirmation hearing regarding the Debtors' proposed plan would be held on August 24, 1999, at 9:00 a.m.

Enclosed with the Notice was a Summary of Debtors' Plan, the "Plan Summary," which was also transmitted to, and received by, the Bank. The Plan Summary informed the Bank that its claim

---

1. The Bankruptcy Code is contained in 11 U.S.C. §§ 101–1330. Unless stated to the contrary, all future statutory references are to the Bankruptcy Code, e.g., "§ ——"

would be secured for $8,000; interest on the secured portion of the claim was stated to be "12.0% Estimate."

The Notice and the Plan Summary failed to explicitly advise secured creditors, including the Bank, that if an objection was lodged, a valuation hearing regarding secured claims would take place at the confirmation hearing. The Notice and Plan Summary each informed creditors that the claims bar date was November 10, 1999.[2]

On August 24, 1999, a confirmation hearing occurred. The Bank did not appear, and no objections to confirmation were filed. The court orally confirmed the Debtors' proposed plan. On August 26, 1999, an Order Confirming Plan and Approving Attorney's Fees was signed and docketed.

One week after conclusion of the confirmation hearing, on August 31, 1999, the Bank filed a Proof of Claim. The claim was filed as fully secured in the amount of $12,812.12. Interest was asserted as 15.25%, which was the contract rate.[3]

On March 29, 2000, the Chapter 13 Trustee filed his Notice of Intent to Pay

Claims.[4] In this notice, the Bank was listed as holding a $12,812.12 fully secured claim, with interest to be paid at 15.25% per annum.[5] Interested parties were informed by the trustee that objections to the amounts and classifications of claims filed and to be paid under the plan should be lodged within thirty days. No subsequent order was signed by the court to approve the trustee's notice of intent to pay claims or which established any time deadline to object to the trustee's notice.[6]

On July 7, 2000, the Debtors filed an Objection to Claim of Bank One. The Debtors requested, consonant with the confirmed plan, that the value of the automobile be determined at $8,000, with the balance of the claim unsecured, with interest on the secured portion of the claim established at 13% per annum.[7] On July 27, 2000, the Bank responded to the Debtors' objection to its claim, basically asserting that its Proof of Claim governed its treatment under the plan.[8]

In September, 2000, because of the importance of the issue presented, the court permitted the Debtor's Bar of West Michigan to participate and file an *amicus* brief.

---

2. In this district, chapter 13 confirmation hearings routinely are held prior to the claims bar date.

3. Attached to the Bank's claim was the Motor Vehicle Installment Sale Contract & Security Agreement regarding the automobile and proof of perfection of the Bank's security interest.

4. At the time this notice was generated, Brett N. Rodgers was the trustee. Later, the United States Trustee reassigned this case to Raymond B. Johnson, as successor trustee.

5. The trustee, as has generally been the prior custom and practice in this district, accepted the Bank's secured claim and gave it precedence over the Debtors' previously confirmed plan.

6. In the past, the court signed orders approving a chapter 13 trustee's motion for payment of claims. Such a practice is no longer adhered to in this district. Instead of a motion, the trustee now notifies debtors and creditors that claims will be paid, as listed in the trustee's notice, unless an objection is filed.

7. As a related matter, the trustee moved to dismiss the Debtors' case because the plan exceeded sixty months as a result of the Bank's higher secured claim and higher interest rate. The Debtors objected to the trustee's requested dismissal.

8. In Paragraph 9 of its response, the Bank stated: "There was no objection [to confirmation] filed by [the Bank] because the claim was accepted at [the Bank's] value and interest rate."

On September 13, 2000, after a status conference, the court issued a scheduling order which imposed deadlines for submission of legal memoranda. An evidentiary hearing was scheduled for November 28, 2000.

Briefs were timely submitted by the Debtors, the Bank, the successor Chapter 13 Trustee, and the Debtors' Bar of West Michigan. At the hearing, all material facts were stipulated to by counsel. The court heard oral argument and took the matter under advisement to render a subsequent written opinion.

## IV.

### DISCUSSION

A. *The Binding Effect of a Confirmed Chapter 13 Plan.*

■ "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." § 1327(a). As stated in a prior opinion:

This court confirmed the Debtors' plan. The confirmed plan is binding upon the Debtors and [the secured creditor]. § 1327(a).... As a result of confirmation, [the secured creditor] could not demand a greater payment on the secured portion of its claim. Likewise, the Debtors could not demand to pay any less. Courts often characterize this as the *res judicata* effect of a confirmed plan. "An order confirming a Chapter 13 plan is a final order; therefore, absent a timely appeal, such an order is res judicata, and the terms of the plan are not subject to a collateral attack." *In re Dunlap,* 215 B.R. 867, 869 (Bankr. E.D.Ark.1997) (citing *Piedmont Trust Bank v. Linkous (In re Linkous),* 990 F.2d 160, 162 (4th Cir.1993)); *In re*

*Szostek,* 886 F.2d 1405, 1413 (3d Cir. 1989); 8 Collier on Bankruptcy 1327.02[1] (Lawrence P. King, 15th ed.1996). *See generally Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938); *Sanders Confectionery Products, Inc. v. Heller Financial, Inc.,* 973 F.2d 474 (6th Cir.1992).

*In re Goos,* 253 B.R. 416, 419 (Bankr. W.D.Mich.2000) (discussing binding effect of chapter 13 plan confirmation in connection with the debtors' request to modify confirmed plan).

Other reported decisions from this district have also agreed that a confirmed plan is binding upon parties in interest. In a chapter 13 case involving the untimely filing of a claim by the Internal Revenue Service, Judge Stevenson stated:

Res judicata, which is the basis for the binding effect of a confirmed plan, binds the creditor to the terms of the plan and precludes relitigation of issues which either were previously decided or could have been previously decided. *Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938). While a secured creditor is bound by a plan's provisions regarding a debtor's personal liability, a secured creditor's in rem rights are another matter. Whether a secured creditor's in rem rights survive confirmation depends upon whether the claim is "provided for" within the meaning of § 1327(c). *Rake v. Wade,* 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993). If provided for in the plan, the secured creditor may not prevent property from revesting in the debtor free and clear of its lien. See 11 U.S.C. 1327(c) and *In re Lee,* 182 B.R. 354 (Bankr.S.D.Ga.1995).

*In re Jones,* 238 B.R. 338, 344 (Bankr. W.D.Mich.1999); *cf. In re Moore,* 247 B.R. 677, 682 (Bankr.W.D.Mich.2000) (Hughes, J.) (discussing res judicata effect of § 1327(a) in connection with § 1329(a)

plan modification). Based upon *Goos, Jones,* and *Moore,* all three bankruptcy judges in this district have recognized the binding effect of a confirmed chapter 13 plan.

The discussion would end here if there was not a beclouding body of case law addressing the apparent conflict between the binding effect of confirmation and the so-called claims allowance process.[9] The haze slightly thickens when one considers the permissive ability to file a motion to value a secured creditor's collateral.

B. *Plan Confirmation, Claims Allowance and Permissive Valuation Processes.*

1. *The Chapter 13 Plan Confirmation Process.*

The chapter 13 case is commenced by the debtor filing a petition. § 301. If the chapter 13 case involves primarily consumer debts, as most cases do, all creditors must be given notice of the filing, by mail, within twenty days after the case is filed. Fed.R.Bankr.P. 2002(*o*).[10]

"The debtor shall file a plan." § 1321. The chapter 13 plan may be filed with the petition but shall be filed within fifteen days after the petition unless the court extends the time to file the plan. Rule 3015. When creditors are mailed notice of the § 341 meeting, Rule 2002(a), the chapter 13 plan, or a summary of the plan, must also be included. Rule 3015(d).

The Bankruptcy Code establishes mandatory and permissive chapter 13 plan provisions. § 1322. A plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence...." [11] § 1322(b)(2). It is noteworthy that § 1322(b)(2) permits modification of "rights of holders of secured claims" and does *not* limit modification by using language such as "rights of holders of <u>allowed</u> secured claims." [12]

Chapter 13 permits a debtor to provide for a secured creditor's claim in three different ways. § 1325(a)(5). One method is to provide that the holder of the secured claim retain its lien and be paid the value of the property which secures its lien, with interest, i.e., present value. § 1325(a)(5)(B)(i) and (ii).[13] The value shall be determined "as of the effective date of the plan". § 1325(b)(5)(B)(ii). "If no objection [to confirmation] is timely filed, the court may determine that the plan has been proposed in good faith and not by any means forbidden by law with-

---

9. "More contemplative battles over the extent of the binding effect of confirmation Linder § 1327(a) have been fought when the provisions of a confirmed plan collide with the claims allowance process. Problems arise because the Bankruptcy Code describes two parallel processes that inevitably interact and overlap at confirmation in a Chapter 13 case." 2 Keith M. Lundin, CHAPTER 13 BANKRUPTCY § 6.10 at 6–15 (2d ed.1994).

10. All future references to the Bankruptcy Rules will be "Rule ——."

11. In this contested matter, the antimodification provision regarding the Debtors' residence is not an issue.

12. This judge believes the exclusion of the word "allowed" is not an oversight; Congress, in a different subsection of Section 1322, refers to a "claim allowed." § 1322(b)(6).

13. The other two alternative methods, acceptance of plan treatment or surrender of the liened property, § 1325(a)(5)(A) and (C), are not at issue in this contested matter. The Bank did not accept its treatment under the Debtors' plan; the Debtors did not propose to surrender the automobile to the Bank. In the Sixth Circuit, present value interest is determined by a market rate standard. United States v. Arnold, 878 F.2d 925 (6th Cir.1989).

out receiving evidence on such issues." Rule 3015(f).

■ The court shall hold a chapter 13 confirmation hearing. § 1324. A party in interest, including a secured creditor, may object to the confirmation of a plan.[14] § 1324. All creditors shall be given at least twenty-five days' notice of the chapter 13 confirmation hearing date and the deadline to file objections to confirmation. Rule 2002(b).[15]

If all confirmation requirements are met, including an appropriate plan provision for the treatment of a holder of an allowed secured claim,[16] the court shall confirm the chapter 13 plan. § 1325(a). Upon entry of the confirmation order on the docket, the order is automatically stayed for ten days after entry, unless the court orders otherwise. Rule 3020(e). The confirmed plan is then binding upon all parties in interest, including the debtor and the secured creditor. § 1327(a).

### 2. The Claims Allowance Process.

A creditor may file a proof of claim. § 501; Rule 3001(a) (form and content of claim). If a creditor fails to file a claim, in certain circumstances the debtor or trustee may file a claim in the creditor's name. § 501(c); Rule 3004. A filed claim is deemed allowed unless an objection is filed. § 502(a). If a claim, including a secured claim, is based upon a writing, the writing shall be filed with the claim. Rule 3001(c). If a creditor claims a security interest, proof of perfection shall also be filed. Rule 3001(d).

■ A proof of claim properly executed and filed is prima facie evidence of the validity and amount of the creditor's claim. Rule 3001(f). The Proof of Claim form, Official Form No. 10, has a place for a secured creditor to assert the value of its collateral. In this district, although

---

**14.** A creditor has the primary obligation to object to its plan treatment. "While we do not understate the importance of the obligation of the bankruptcy court or the trustee to determine that a plan complies with the appropriate sections of the Bankruptcy Code prior to confirmation of the plan, we nonetheless recognize that the affirmative obligation to object to the [debtors'] plan rested with [the secured creditor], not with the bankruptcy court or the trustee." *In re Szostek*, 886 F.2d 1405, 1414 (3d Cir.1989).

**15.** Parties in interest, including secured creditors, are expeditiously given relevant information to allow them to protect their rights and assert legal positions at the confirmation hearing. In this district, a combined notice is sent which informs all creditors of the case filing date, the date, time and place of the § 341 meeting, the deadlines (for governmental units and other entities) to timely file claims, the provisions of the proposed chapter 13 plan (by an enclosed plan summary), the deadline to file objections to confirmation, and the confirmation hearing date, time and place. In this case, the Debtors filed their petition on June 30, 1999. The Notice and

Plan Summary were mailed on July 13, 1999. The confirmation hearing was scheduled to take place forty-two days later, on August 24, 1999. The deadline to object to confirmation was August 19; the Bank had more than one month to object to its treatment under the Debtors' proposed plan.

**16.** Section 1325(a)(5) addresses treatment of "each allowed secured claim provided for by the plan." An "allowed secured claim" is determined by whether sufficient value in collateral exists to support an in rem right. § 506(a). For example, if two creditors each hold a debt against a debtor in the amount of $10,000, and both creditors have a security interest in the same collateral, assuming the collateral is valued at $10,000, only one creditor will hold an "allowed secured claim" for § 1325(a)(5) purposes. The other creditor will not hold an "allowed secured claim" and is not entitled to retention of lien, and payment of the value of its collateral with interest. because there is no value for that creditor. § 506(a). Whether a creditor's claim is an "allowed secured claim" can be determined before, at, or after the confirmation hearing depending upon the circumstances.

there is no specific place on Official Form No. 10 to do so, some secured creditors also insert an interest rate. Nothing in the Bankruptcy Code or Rules gives any evidentiary effect whatsoever to a secured creditor's asserted value of collateral or its requested interest rate. A secured creditor who files a claim has a correct and lawful expectation that the validity and the amount of its nonbifurcated claim, absent objection, is proven and binding upon the debtor, the trustee, and other creditors. However, it is a misconception for such a creditor to expect that filing a claim establishes the merit and sufficiency of an asserted value of collateral or the appropriate present value interest rate. To determine an "allowed secured claim" under § 506(a),[17] something more is required other than the mere filing of a claim.[18]

An untimely filed claim may be disallowed. § 502(b)(9). An *unsecured* claim must generally be filed no later than ninety days after the first date set for the § 341 meeting. Rule 3002(a) and (c). However, neither the Bankruptcy Code nor the Rules impose any requirement to file, or deadline for filing, a secured claim. *See, e.g., In re Schaffer,* 173 B.R. 393, 395 (Bankr.N.D.Ill.1994).

After a claim is filed, an objection to the claim may be filed. § 502. A claim previously deemed allowed, § 502(a), may be disallowed, in whole or in part, based upon various reasons. § 502(b)(1)–(9).[19] When a previously filed claim is objected to by a party in interest, the claimant is entitled to at least thirty days' notice of the objection and the hearing thereon. Rule 3007. After an objection to a claim is lodged, the creditor may not withdraw its claim unless authorized to do so upon notice to the trustee and a hearing. Rule 3006; *cf.* Rule 7041 (which prohibits a voluntary dismissal of a plaintiff's complaint after an answer is filed unless the court authorizes dismissal). At the conclusion of the claims allowance process, a creditor will hold a claim, § 101(5), and will be entitled to payment of its debt, § 101(12). How the debt/claim is paid does not depend upon the claims allowance process; rather, it depends upon the confirmed plan[20] or, in chapter 7, the Bankruptcy Code distribution provision. *See* § 726.

■ To receive payment under a confirmed chapter 13 plan, a secured creditor must hold an allowed claim. Rule 3021. For a secured creditor to hold an allowed claim, and receive distribution pursuant to its treatment under § 1325(a)(5)(B)(i) and (ii), a proof of claim must be filed. §§ 501

---

**17.** "Allowed secured claim" has a different meaning under § 506(d). "Were we writing on a clean slate, we might be inclined to agree with petitioner that the words 'allowed secured claim' must take on the same meaning in § 506(d) as in § 506(a). But given the ambiguity of the text, we are not convinced that Congress intended to depart from the pre-Code rule that liens pass through bankruptcy unaffected." *Dewsnup v. Timm,* 502 U.S. 410, 417, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992).

**18.** For example, a formal valuation hearing, the acceptance of a chapter 13 plan treatment, the filing of a stipulation as to value, the determination of value at a confirmation

hearing, the approval of a sale of the collateral, or the resolution of a priority dispute between two secured creditors with an interest in the same collateral, is required.

**19.** In § 502(b), the only subsection that requires property to be valued pertains to a tax assessed against property of the estate. § 502(b)(3).

**20.** Support for this statement is found in § 1325(a)(5)(B)(ii) which requires that collateral value be determined "as of the effective date of the plan" rather than on the date a claim is signed or filed, which might be substantially before or after confirmation.

and 502; *Matter of Baldridge,* 232 B.R. 394, 396 (Bankr.N.D.Ind.1999); *In re Schaffer,* 173 B.R. 393, 397 (Bankr.N.D.Ill. 1994); *In re Alderman,* 150 B.R. 246, 251–52 (Bankr.D.Mont.1993); *contra In re Rome,* 162 B.R. 872, 875 (Bankr.D.Colo. 1993) (a chapter 13 trustee must pay a secured creditor under a confirmed plan even if the secured creditor fails to file a claim; the court does not discuss the importance of Rule 3021).

An unsecured creditor who untimely files a claim may have its claim summarily disallowed upon objection. § 502(b)(9); Rule 3002(c); *In re Zimmerman,* 156 B.R. 192, 197 (Bankr.W.D.Mich.1993) (en banc) (recognizing substantive and procedural balancing between § 502 and Rule 3002). A secured creditor will not have the secured portion of its claim disallowed if it fails to file a claim within the claims filing deadline established for *unsecured* creditors. Cf. *Baldridge,* 232 B.R. at 395–96 (secured creditors are not required to file a proof of claim; "The Bankruptcy Rules do not state a specific consequence for a secured creditor's failure to file a proof of claim."); *contra, Schaffer,* 173 B.R. at 397–98 (implicitly applying the deadline to file an unsecured claim to the timeliness of filing a secured claim). When an undersecured (i.e., partially secured) creditor files a claim past the deadline imposed by § 502(b)(9) and Rule 3002(c), the unse-

cured portion is disallowed; the secured portion, as determined by valuation of collateral, is not disallowed by the Bankruptcy Code or applicable Rule.[21]

### 3. The Permissive Valuation Process.

■ "The court may determine the value of a claim secured by a lien[22] on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct." Rule 3012. Valuation of a secured creditor's collateral by motion practice is permissive, not mandatory. *Cf.* § 102(4) ("'may not' is prohibitive, and not permissive").

■ To obtain valuation by this process, a motion, Rules 9013 and 9014, is filed by a party in interest.[23] The motion should state the asserted value and the basis of the valuation. Rule 9013 ("The motion shall state with particularity the grounds therefor, and shall set forth the relief or order sought."). After hearing, the court determines the value of the collateral. By so doing, the secured creditor's allowed claim is determined. § 506(a).

■ Upon entry of a Rule 3012 order, the court-determined valuation will often become the law of the case. *United States v. United States Smelting Refining & Mining Co.,* 339 U.S. 186, 198, 70 S.Ct.

---

**21.** A distinction must be made between timeliness of filing, Rule 3002(c), and entitlement to receive distribution under a confirmed chapter 13 plan, Rule 3021. Some cases fail to recognize this distinction and lump an artificial timeliness requirement for filing a secured creditor's claim together with a denial of distribution to the secured creditor, even though a claim was filed albeit after the deadline to file unsecured claims.

**22.** A "lien" includes a "security interest." § 101(37) and (51).

**23.** "Party in interest" is not defined in the Bankruptcy Code or Rules. A party in interest includes the debtor, the trustee, a secured creditor, an unsecured creditor, or "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding." *Matter of James Wilson Assocs.,* 965 F.2d 160, 169 (7th Cir.1992) (discussing "party in interest" within meaning of § 1109(b)); *In re Citi–Toledo Partners II.,* 254 B.R. 155, 162–63 (Bankr.N.D.Ohio 2000) ("party in interest" should be broadly defined to include all entities that have a "practical stake in the outcome of the case").

537, 544, 94 L.Ed. 750 (1950) ("The rule of the law of the case is a rule of practice, based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter."); *United States v. Todd*, 920 F.2d 399, 403 (6th Cir.1990) ("Under the doctrine of the law of the case, a decision on an issue made by a court at one stage of a case should be given effect in successive stages of the same litigation."); *General Electric Capital Corp. v. Hoerner (Matter of Grand Valley Sport & Marine, Inc.)*, 143 B.R. 840, 853 (Bankr.W.D.Mich.1992) (recognizing a bankruptcy court should follow its own prior rulings without repeated reconsideration); *cf.* § 506(a) ("Such value shall be determined in light of the purpose of the valuation and the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."). Therefore, if two valuations regarding the same collateral are for different purposes, the law of the case doctrine may not apply.

■ Because of the law of the case doctrine, after a Rule 3012 valuation motion is decided, no further valuation should likely be required during the chapter 13 plan confirmation process.[24] However, once collateral has been valued during the plan confirmation process and a binding confirmation order entered, a Rule 3012 motion to value the collateral would be superfluous. § 1327(a).

### 4. *Adversary Proceedings and Valuation of Collateral.*

■ Is an adversary proceeding required to value a creditor's collateral and determine secured status under § 506(a)? The short answer is "no."

An adversary proceeding includes "a proceeding to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding [related to a debtor's claimed exemptions]." Rule 7001(2). "Validity" is "having legal strength or force," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE, UNABRIDGED 2529 (1986), i.e. "enforceable." *Id.* at 751. "Priority" is "superiority in rank [or] position," as in "the priority in law of liens on a property." *Id.* at 1804. "Extent" is "the range (as of inclusiveness or application) over which something extends," i.e., the "scope" or "comprehensiveness." *Id.* at 805. The "extent" of a lien is not synonymous with the value of collateral; rather "extent" relates to the identification of the scope of specific property which is subject of the lien.

Summarizing, "[a]n adversary proceeding is not required to modify a secured creditor's rights in chapter 13." *Lee Servicing Co. v. Wolf (In re Wolf)*, 162 B.R. 98, 106 (Bankr.D.N.J.1993). An adversary "proceeding is relevant to the basis of the lien itself. . . ." *Id.*

### 5. *The Conflicting Case Law.*

The reported cases are in disarray. There exists no clear majority view regarding the proper method by which to modify liens in bankruptcy cases, regardless of whether in chapter 13 or chapter 11. Because lien modification is substantially similar in both chapters, *compare* §§ 1322(b)(2) and 1325(a)(5) *with* §§ 1123(b) and 1129(b)(2)(A), chapter 13

---

**24.** This assumes there is no dramatic change in the value of the collateral after the valuation hearing. To modify a secured claim by cramdown, §§ 1322(b)(2) and 1325(a)(5)(B), valuation must be as of the *effective date* of the plan. Absent extraordinary circumstances, or a long delay between a prior valuation order and the plan confirmation, the value of collateral should remain approximately the same.

reported decisions are sometimes cited as authority in chapter 11 decisions and vice versa.

The reported decisions may be generally grouped into one of three classifications: "primacy of plan confirmation," primacy of "claim allowance," or "primacy of confirmation conditioned on compliance with due process."[25] Eric S. Richards, *Due Process Limitations on the Modification of Liens Through Bankruptcy Reorganization*, 71 Am.Bankr.L.J. 43, 64–101 (1997) (grouping reported decisions within the three categories) (hereinafter "Richards"). *See also* 2 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 6.10 (2d ed.1994) (dividing reported cases into the "confirmation process," the "claims allowance process," or the " 'just plain hostile' category") (hereinafter "Lundin").

Cases that favor the "primacy of plan confirmation"—"confirmation process" approach include: *In re Penrod*, 50 F.3d 459 (7th Cir.1995) (chapter 11); *In re Pence*, 905 F.2d 1107 (7th Cir.1990) (chapter 13); *In re Szostek*, 886 F.2d 1405 (3d Cir.1989) (chapter 13); *Minstar, Inc. v. Plastech Research, Inc. (In re Arctic Enterprises, Inc.)*, 68 B.R. 71 (D.Minn.1986) (chapter 11); *Lee Servicing Co. v. Wolf (In re Wolf)*, 162 B.R. 98 (Bankr.D.N.J.1993) (chapter 13). Cases that favor the "primacy of claim allowance"—"claims allowance process" approach include: *Cen–Pen Corp. v. Hanson*, 58 F.3d 89 (4th Cir.1995) (chapter 13); *Sun Finance Co. v. Howard (In re Howard)*, 972 F.2d 639 (5th Cir.1992) (chapter 13); *Foremost Financial Services Corp. v. White (In re White)*, 908 F.2d 691 (11th Cir.1990) (per curiam) (chapter 13); *Simmons v. Savell (In re Simmons)*, 765 F.2d 547 (5th Cir.1985) (chapter 7 convert-ed to chapter 13); *Fireman's Fund Mtg. Corp. v. Hobdy (In re Hobdy)*, 130 B.R. 318 (9th Cir. BAP 1991) (chapter 13). The so-called "middle-of-the-road" approach cases include: *Piedmont Trust Bank v. Linkous (In re Linkous)*, 990 F.2d 160 (4th Cir.1993) (chapter 13); *In re Basham*, 167 B.R. 903 (Bankr.W.D.Mo.1994) (chapter 13).

These cases, and others which address the issue, are summarized by Judge Lundin and Mr. Richards. Lundin, § 610 at 6–17 to 6–23; Richards at 65–100. This judge sees no reason to attempt to restate or recast the excellent summaries of the two commentators.

In many of these opinions, which involve different procedural backgrounds and facts, the courts seem concerned (indeed sometimes troubled) about the procedural due process[26] given to affected creditors regarding the plan confirmation process. A careful review of these cases leads one to believe that, in some instances, a court's perception regarding the type of notice afforded a secured creditor drives its decision to follow the claims allowance process rather than the Bankruptcy Code-mandated plan confirmation process. Also, given the appellate courts' traditional role, the higher courts' decisions often solely reflect the record below. Decisions are therefore limited to or constrained by the issues presented. Thus far, an appellate decision has not broadly examined the Bankruptcy Code provisions and applicable Rules to develop a principled comprehensive and coherent analysis. Such an analysis is necessary to make sense of and reconcile the conflicting cases.

---

25. Also sometimes described as the "middle-of-the-road approach." *In re Basham*, 167 B.R. 903, 907 (Bankr.W.D.Mo.1994).

26. This should be contrasted with substantive due process which "is not likely to be relevant in bankruptcy proceedings." Richards at 46.

### C. To Modify A Secured Claim, The Plan Confirmation Process Must Be Followed.

#### 1. Modification Of Liens By Plan Confirmation.

■ The Bankruptcy Code contemplates modification of secured creditors' claims by confirmation of a chapter 13 plan. See §§ 1321, 1322(b)(2), 1324, and 1325(a)(5)(B)(i) and (ii). Upon confirmation, the plan is binding upon the debtor, a secured creditor, the trustee and all other parties in interest. § 1327(a).[27] The applicable Rules state the procedures to accomplish plan confirmation, including the modification of secured creditors' claims. See, e.g., Rules 2002(b), 2002(o), 3015(b), (d), and (f), and 3020(e).

■ Even if a judge believes that the statutory provisions and complementary rules may result in an unfair result in a given instance, that belief is insufficient to ignore the statutory language or attempt to create an alternative that seems palliatively just. A court should not use equitable principles to disregard unambiguous statutory language. Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988); accord, Childress v. Middleton Arms, Ltd. Partnership (in re Middleton Arms, Ltd. Partnership), 934 F.2d 723, 724 (6th Cir.

1991). A statute should not be ignored or eviscerated by a court.[28]

■ Plan confirmation is the statutorily-mandated process to accomplish lien modification. §§ 1322(b)(2) and 1325(a)(5)(B). This process requires valuation of the secured claim, § 506(a), as of the "effective date" of confirmation, § 1325(a)(5)(B)(ii), in addition to dictating the treatment of such modified secured claim provided for by the plan, § 1325(a)(5).

#### 2. The Claims Allowance Process Does Not Establish The Amount Of A Secured Claim For Modification Purposes.

The claims allowance process has already been summarized in this opinion. See IV.B.2. above. Although a number of cases assume that a secured claim may be determined by this process, such a result is not supported by the Bankruptcy Code or Rules.[29]

■ A properly executed claim is prima facie proof as to validity. "Validity" pertains to legal correctness and enforceability. See p. 15 above. Therefore, absent objection, the claim will not be defeated on grounds such as lack of consideration, usury or unconscionability. §§ 502(a) and 502(b)(1); Rule 3001(f). Also, the Proof of Claim form permits

---

**27.** When a party in interest desires to challenge a confirmed plan, procedures and remedies are discussed below.

**28.** "[Courts] are under the constraints imposed by the judicial function in our democratic society. As a matter of verbal recognition certainly, no one will gainsay that the function in construing a statute is to ascertain the meaning of words used by the legislature. The great judges have constantly admonished their brethren of the need for discipline in observing the limitations. A judge must not rewrite a statute, neither to enlarge it nor contract it." Felix Frankfurter, Some Reflec-

tions on the Reading of Statutes, 47 COLUM.L.REV. 527, 533 (1947) (hereinafter "Frankfurter").

**29.** In discussing interpretation of the statutory text, Justice Frankfurter stated: "The Court no doubt must listen to the voice of Congress. But often Congress cannot be heard clearly because its speech is muffled.... One more caution is relevant when one is admonished to listen attentively to what a statute says. One must also listen attentively to what it does not say." Frankfurter at 535–36 (emphasis added).

assertion of secured status. *See* Official Form 10. A creditor is required to attach a copy of the agreement which grants its security interest, Rule 3001(c), and demonstrate perfection of that interest, Rule 3001(d). Therefore, absent objection, prima facie proof exists that the creditor has a valid, enforceable and perfected security interest. § 3001(f). An objection to the validity, priority, or extent of the security agreement is not a contested matter, Rule 3007, but rather requires an adversary proceeding. B.R. 7001(2); *see* IV.B.4. above.

■ A properly executed and filed claim is also prima facie proof as to the amount of debt owed by the debtor, § 101(12), and the creditor's claim amount, § 101(5).[30] Therefore, to challenge the amount of a properly executed and filed claim, an objection is, required. § 502(b); Rule 3007.

■ Where in the Bankruptcy Code or Rules is there a provision which attributes prima facie evidentiary effect to a listed value or an asserted interest rate on a proof of claim form? There is none.[31]

Cases that state the claims allowance process mandates the amount of the secured claim under § 506, or give any credence to a creditor's claimed interest rate, are wrongly decided. The claims allowance process gives prima facie proof only to the amount of the entire claim, which may be fully secured, undersecured, or entirely unsecured. The claims allowance process also mandates that the entire claim is valid and that any security interest is valid. *However, the claims allowance process does not determine the amount of the secured portion of a claim under § 506(a).* *Cf. In re Sanders,* 243 B.R. 326, 331 (Bankr.N.D.Ohio 2000) (Baxter, J.) (secured claim filed after confirmation is ineffective to constitute objection to plan treatment); *In re Rodgers,* 180 B.R. 504, 506 (Bankr.E.D.Tenn.1995) (Stinnett, J.) (claim timely filed after plan confirmed does not supersede the binding effect of confirmation, even though the plan provision was legally improper); *Wolf,* 162 B.R. at 103 (secured creditor filed proof of claim prior to confirmation hearing with an objection to confirmation; the value of property that was determined at the confirmation hearing is binding upon the creditor).

---

**30.** "The meaning of "debt" and "claim" are coterminous." *Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 558, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990).

**31.** It would probably be impossible to accord prima facie proof to § 506(a) secured status or to a secured creditors' asserted present value interest rate. The value of collateral must be determined as of the plan "effective date." Depending on the type of collateral, value can vary—real estate values may be relatively constant, while accounts receivables values may deteriorate rapidly. Also, when more than one creditor holds a security interest in the same collateral, it may be highly problematic which creditor holds an allowed secured claim or the amount of either creditor's § 506(a) secured status. For example, Creditor A has a claim of $10,000 and holds a security interest on an item of equipment which it believes has a value of $8,000. Creditor B also has a claim of $10,000 and holds a security interest in the same item of equipment that it believes has a value of $12,000. Although both creditors have attached proof of perfection and Creditor A is "first in time," Creditor B asserts a purchase money security interest. To further complicate matters, each creditor gratuitously asserts contract interest at the rates of 14% per annum and 17.5% per annum respectively. The market rate at the time both claims are filed is 12%, but the Federal Reserve is fairly rapidly lowering interest rates. Notwithstanding lack of statutory or rules authority, as a practical matter, how can either asserted allowed secured claim amount or interest rate be given any evidentiary effect?

3. *The Importance Of The Claims Allowance Process In The Treatment Of Secured Claims Determined By The Plan Confirmation Process.*

To say that the claims allowance process is not relevant to determination of a secured claim does not mean that the process is unimportant. It is extremely significant in the overall analysis regarding the treatment, and especially the payment, of secured claims in chapter 13 cases. To receive distribution of its collateral value with present value interest under its retained lien, the secured creditor must hold an "allowed secured claim" which is "provided for by the plan." [32] § 1325(a)(5). The interrelationship between plan confirmation and allowance of claims "provided for under the plan" causes different results depending upon the factual circumstances.

a. *Secured claim filed before plan confirmation.*

■ A partially secured creditor receives notice of the case and files a secured claim. The claim is therefore deemed valid and the claim amount is established. The plan is subsequently confirmed and establishes the treatment of the bifurcated secured claim, including value of the collateral and the present value interest rate. If the secured creditor believes its plan treatment regarding the secured claim is erroneous, it must object to confirmation. If no objection is filed, the creditor is bound by the plan treatment of its secured claim.

■ However, the entire claim remains valid as to its amount. To reduce the bifurcated unsecured claim amount, the debtor or trustee must file a claim objection. Because the secured creditor has filed a claim, which is deemed allowed, it will be paid both its secured and unsecured debts per the applicable plan provisions. If the debtor or the trustee later believes that the treatment of the secured claim is improper, that belief does not matter-both the debtor and the trustee are also bound by the terms of the confirmed plan.

b. *Secured claim filed after confirmation but before the unsecured claims bar date.* [33]

The creditor receives the notice of the case but does not immediately file a claim. The debtor's plan is confirmed, either without objection or over objection. The treatment of the creditor's secured claim is established—collateral is valued and an interest rate is determined—and the plan treatment is binding. The credit later files its claim as secured. The claim is deemed allowed. The creditor receives its secured claim distribution in accordance with the confirmed plan. The amount of the unsecured claim is normally established by the claims allowance process and paid, also in accordance with the confirmed plan. *Cf. Factors Funding Co. v. Fili (In re Fili),* 257 B.R. 370, 374 (1st Cir. BAP 2001) (the creditor's entire claim was disallowed by the confirmation order, "[W]e hold that in the face of notice that timely and unambiguously informs a creditor that his claim will be disallowed in total and discharged

**32.** A natural reading of "provided for by the plan" within the meaning of § 1325(a)(5) is to "make a provision for" or "stipulate to." *Rake v. Wade,* 508 U.S. 464, 473, 113 S.Ct. 2187, 2192 (1993) (citation omitted). Under § 1328(a) "provided for by the plan" may be broader and "is commonly understood to mean that a plan 'makes a provision' for,

'deals with,' or even 'refers to' a claim." *Id.* 508 U.S. at 474, 113 S.Ct., at 2193 (citation omitted).

**33.** "Bar date" in this opinion is synonymous with the deadline to file timely claims. § 502(b)(9); Rule 3002(a) and (c).

under a Chapter 13 plan pending for confirmation, the creditor may not ignore the confirmation process and fail to object simply because the bar date for filing a proof of claim has yet to expire.").

### c. Secured claim is filed after confirmation and after the unsecured claims bar date.

When the creditor files its claim after the unsecured claims bar date the secured portion of the claim, as determined by the plan confirmation process, is deemed allowed because there is no bar date for secured claims. The unsecured portion of the claim, upon objection, shall be disallowed as untimely. The secured creditor is paid the amount of its secured claim (established by the plan) because that claim is now allowed.

There exists a thirty-day window period immediately after the expiration of the unsecured claims bar date. During this period, the debtor or the trustee may file a claim, sometimes called a "protective claim", on behalf of any creditor. Rule 3004. The creditor may then file a claim to supersede the protective claim filed by the debtor or trustee.

The debtor or the trustee may desire to file a protective claim so the secured creditor will hold an allowed claim, albeit involuntary,[34] and the trustee may then commence payments of the reserved funds

already on hand. If the distributions sent to the secured creditor are returned, or if the checks are not cashed, ninety days after final distribution, the trustee shall deposit the funds with the court. § 347(a); 28 U.S.C. § 2041 et seq.

 It should be noted that a confirmed plan is binding upon all parties in interest, not just the secured creditor.[35] Therefore, even when the secured creditor does not file a claim, the debtor must continue to pay the full plan payment. The trustee, because payment cannot be made to the secured creditor because no allowed claim yet exists, Rule 3021, must retain the funds for future payment to the secured creditor if a claim is subsequently filed.

 There is a point in time when it will be too late for a secured creditor to file a proof of claim and hold an allowed claim.[36] After this point in time, a secured creditor will not be able to receive any distribution from the estate. The debtor will have received a chapter 13 discharge, § 1328(a), which will discharge all unsecured debts, § 1328(c), thereby eliminating all in personam liability to the secured creditor, and which imposes an injunction against collecting the discharged debt, § 524(a). The secured creditor is then limited to its in rem lien rights in the collateral.[37]

---

**34.** "A secured creditor may be dragged into the bankruptcy involuntarily, because the trustee or debtor ... may file a claim on the creditor's behalf." Penrod, 50 F.3d at 462 (citing § 501(b) and In re Lindsey, 823 F.2d 189, 191 (7th Cir.1987)).

**35.** "As a result of confirmation, [the creditor] could not demand a greater payment on the secured portion of its claim. Likewise, the [debtor] could not demand to pay any less." Goos, 253 B.R. at 419.

**36.** For purposes of this opinion, it is not now necessary to determine when it is too late to

file a secured claim. Some alternatives are upon completion of all plan payments by the debtor, § 1328(a), after the trustee files a final report and account, §§ 1302(b)(1) and 704(9), or when the case is closed, § 350.

**37.** "A secured creditor can bypass his debtor's bankruptcy proceeding and enforce his lien in the usual way, which would normally be by bringing a foreclosure action in state court. This is the principle that liens pass through bankruptcy unaffected. If the creditor follows this route, the discharge in bank-

As discussed above, the claims allowance process is reconcilable with the plan confirmation process. As has been illustrated, the claims allowance process plays a very important role in chapter 13 cases, especially regarding payment of secured claims, notwithstanding that the process has nothing to do with the valuation of, or modification of, secured claims.

### 4. Procedural Due Process Notice Concerns.

#### a. In general.

The often-quoted and most important statement regarding procedural due process and notice is contained in a Supreme Court decision:

> An elementary and fundamental requirement of due process in any proceeding which has to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied.

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314–15, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (citations omitted).

Thus, it is proper for a court to examine three types of possibly defective notice: (1) quantitatively defective notice ("reasonable time"); (2) qualitatively defective notice ("required information"); and (3) viscerally defective notice ("practicalities and peculiarities of the case").

Before addressing the three types of possibly defective notice, a brief revisit to some of the conflicting cases may be helpful.

The Seventh Circuit is correct in its holdings that the plan confirmation process governs modifications of liens. However, all three major decisions by the Seventh Circuit are somewhat distasteful because of possible notice problems.

In *Pence*, a chapter 13 case, the affected secured creditor argued it never received a copy of the plan which extinguished its mortgage. (The bankruptcy court made a finding to the contrary.) Rather than merely accepting the lower court's finding of adequate notice, and then holding the plan confirmation order bound the mortgagee-creditor, *Pence* launched into broad language which seems to impose an inquiry notice standard upon "sophisticated and organized" creditors and which prohibits such a creditor from "stick[ing] its head in the sand and pretend[ing] it would not lose any rights by not participating in the proceedings." *Pence*, 905 F.2d at 1109.

In *Penrod*, a chapter 11 case, a lienholder filed a secured claim, without any objection thereto. The debtor's plan proposed a one hundred percent payment to the lienholder which was separately classified in the plan. However, no lien retention language was in the plan—it was silent regarding this issue. The Seventh Circuit concluded that a filed claim is overcome by a plan provision that deals with the lien of a creditor who participates in the reorganization. *Penrod*, 50 F.3d at 462–64. Is silence in the plan tantamount to giving adequate notice that a creditor's lien will be lost? *See* Richards at 68–69. According to *Penrod*, apparently "yes."

ruptcy will not impair his lien." *Penrod*, 50 F.3d at 461 (citations omitted).

In *In re Harvey*, 213 F.3d 318 (7th Cir.2000), a more recent chapter 13 decision, the plan and the plan summary (per the court, the "short term plan") were disparate. The secured creditor received both the plan and the summary. The summary received by the secured creditor stated that liens would be retained but the summary was silent regarding if, and when, the creditor's lien would be extinguished. The plan stated the lien would be extinguished when the allowed secured claim was fully paid. Therefore. an ambiguity existed between the plan and summary.

The Seventh Circuit properly determined that a party cannot collaterally attack a confirmed plan. However, the court further stated "[if the secured creditor] was genuinely uncertain about the combined effect of the short and long forms (a total of four pages), it was obligated to raise this issue with the bankruptcy court prior to the original plan confirmation." *Harvey*, 213 F.3d at 322. (This decision is sort of an offshoot/combination of the *Penrod*-loss of lien and the *Pence*-inquiry notice requirement for sophisticated creditors.) When a debtor drafts an ambiguous plan and summary, is it fair to require the creditor, who may participate in thousands of chapter 13 cases, to investigate and unravel the linguistic puzzles? According to *Harvey*, apparently "yes."

█ Notwithstanding the possible notice issues in *Pence*, *Penrod*, and *Harvey*, the Seventh Circuit is faithful to the Bankruptcy Code and steadfast in its position that plan confirmation is binding upon all parties. When a plan is confirmed without objection, possible defective notice problems should be dealt with in later proceedings with appropriate relief granted only in appropriate instances. Until entitlement to relief from a confirmation order is established, a confirmed plan must remain binding.

█ The other view, as stated by such decisions as *Simmons, Howard,* and *Cen-Pen,* ignore (or more politely-stated, distinguish) the plan confirmation process and substitute in some other type of procedure (e.g., claims allowance or adversary proceedings) to determine whether a plan should be binding. If the court-mandated (as opposed to the Code-mandated) procedure is not followed, the decisions seem to permit a collateral attack on the confirmation order. Notwithstanding this criticism, these types of cases seem more humanely decided (as opposed to, say, *Penrod*), because they attempt to cure the questionable notice and the possible denial of procedural due process. However, these cases should not be followed. Notice problems should be addressed in the proper context rather than being utilized as a reason to disregard the Bankruptcy Code-mandated binding effect of a confirmed plan.

b. *Quantity of notice.*

█ The Federal Rules of Bankruptcy Procedure impose specific time requirements to provide notice of proceedings to parties in interest. In a chapter 13 case involving consumer debts, notice of the case filing must be given within twenty days. Rule 2002(*o*). A creditor must be sent a copy of the plan, or summary of the plan, when the § 341 notice is served. Rule 3015(d). At least twenty-five days' notice of the confirmation hearing must be given with notice of the deadline to file objections to confirmation. Rule 2002(b). In this district, a combined notice is sent. *See* n. 15 above.

The chapter 13 confirmation process, compared to chapter 11, is on a fast-track. The deadlines seem very short. However, if everything is done correctly, notice will never be quantitatively defective.

The Bankruptcy Rules are drafted under an enabling statute which empowers the Supreme Court to promulgate rules that do not abridge substantive rights. After approval by the Court, the rules have the force of law if not subsequently disapproved by Congress. *See Zimmerman,* 156 B.R. at 196–97 (describing the rule-making process). "Court rules are strongly presumed to be within the guidelines of their enabling statute because they are drafted by the judges who must rule on their validity." *Zimmerman,* 156 B.R. at 196 (citing *Hanna v. Plumer,* 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965)). "Moreover, the rules are presumed to reflect Congress's intent because Congress acquiesces to their acceptance." *Id.* (citing *Sibbach v. Wilson & Co.,* 312 U.S. 1, 14–15, 61 S.Ct. 422, 427, 85 L.Ed. 479 (1941)). *See Matter of Fuller,* 255 B.R. 300, 305 (Bankr.W.D.Mich.2000) (Hughes, J.) (after discussing the rule-making process, the court states: "[T]he bankruptcy rules must be heeded, not ignored.").

Because the applicable Bankruptcy Rules were promulgated by the Supreme Court, if the time requirements are precisely (or indeed very substantially) adhered to, it seems inconceivable that any court will decide the rules fail to "afford a reasonable time for those interested to make their appearance," *Mullane,* 339 U.S. at 314–15, 70 S.Ct., at 657, or fail to provide an adequate opportunity to object to confirmation. Unless a secured creditor receives notice that results in a lesser amount of time than required by the Rules, or receives no notice whatsoever, quantity of notice is not a problem.

c. *Quality of notice.*

The information necessary to apprise a secured creditor that its lien will be modified is not specifically set forth in the Bankruptcy Code or by applicable Rules. Although the secured creditor must be mailed a copy of the plan, or a plan summary, Rule 3015(d), there is no requirement that explicit specified information be included in the plan or plan summary. Therefore, it is not surprising that the content of the notice, i.e., its quality, is more often at issue than the timeliness of the notice, i.e., its quantity.

There are many cases that address the gray area of whether the notice is "of such nature as reasonably to convey the required information." *Mullane,* 339 U.S. at 314–15, 70 S.Ct., at 657. The questions are basically two: (1) What is the "required information" regarding the *substance* of the proposed modification of a lien; and (2) what is the "required information" regarding advising the creditor of the *procedure* to accomplish the proposed lien modification?

The substance of the proposed lien modification should be included in the plan and, if used, in the plan summary. The plan is drafted by the debtor and the debtor's attorney. If the lien treatment information is not precisely stated, the secured creditor should object to confirmation. If the plan is confirmed, notwithstanding that the quality of notice is defective, the order confirming the plan is binding. Although the order may be subsequently set aside, this is a risky road for the secured creditor to travel.

What substantive information should be included in the plan and plan summary? Generally, the following information is sufficient to provide for a secured claim and to properly advise a secured creditor of lien modification information: (1) the correct name of the creditor; (2) the creditor's correct address (if known, or easily discovered, the address where billing inquiries or where information may be obtained; using the

lock box address for payments may be allegedly insufficient); (3) the account number, or loan identification number, used by the creditor to monitor the debt; (4) a description of the specific property which secures the creditor's indebtedness (a creditor may have more than one loan secured by different items or categories of collateral); (5) the asserted value of the collateral which will establish the secured claim under § 506(a); (6) the present value interest rate (in the Sixth Circuit, the market rate) to be paid on the secured claim amount; (7) an explicit statement that the creditor will retain its lien; (8) if the lien is to be later extinguished, the timing of the lien extinguishment (e.g., upon the completion of the secured claim payments, upon completion of all plan payments, or when the debtor's discharge is granted); and (9) any other material information regarding the proposed modification or satisfaction of the creditor's secured claim.

■ If the information regarding the substance of the lien modification is adequate, the plan confirmation order binds the creditor, and any subsequent collateral attack on grounds of allegedly defective notice will be futile. *See, e.g., Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134 (1938). However, if the debtor attempts to achieve a legal outcome beyond that contemplated by the Bankruptcy Code, the debtor does so at her or his risk.[38]

■ The required information to advise a creditor of the procedure to accomplish proposed lien modification is also subject to controversy. While some cases state that the notice of the plan confirmation hearing is sufficient, *see, e.g., Rodgers,* 180 B.R. at 506, ("a further procedural 'warning' was unnecessary"), other courts require that some type of explicit admonition be included, *see, e.g., Linkous,* 990 F.2d at 163 (the notice must state that a § 506 valuation hearing shall be held). This court agrees with *Rodgers* —no explicit warning to creditors is required provided that the quantity and quality of the notice is otherwise sufficient.[39]

■ A debtor, in a proposed plan, should not attempt to pull a "fast one" upon a secured creditor by using the plan confirmation process to invalidate a lien. *See, e.g., Cen–Pen,* 58 F.3d at 93; *accord, In re McMillan,* 251 B.R. 484, 488–89 (Bankr.E.D.Mich.2000) (Spector, J.). However, when a debtor improperly utilizes the plan confirmation process to invalidate a lien (which should be determined by an adversary proceeding), the confirmation order should not automatically be set aside; some procedural action must first be taken by the affected secured creditor to obtain relief from the confirmation order.

d. *Other uneasy feelings regarding notice.*

■ Sometimes the "practicalities and peculiarities of the case" may be important regarding whether notice is adequate. *Mullane,* 339 U.S. at 314–15, 70 S.Ct., at 657. Viscerally defective notice may support setting aside an otherwise binding confirmation order.

---

**38.** Although the plan confirmation order is initially binding, it may be set aside using the procedures described below. Further, misconduct by a debtor or a debtor's attorney may be dealt with appropriately, even if the confirmation order remains binding *See e.g.,* Rule 9011.

**39.** But note that special circumstances may require some additional or more explicit notification of the procedure to be used to modify a lien. *See* Part IV.C.4.d. below.

■ The "totality of circumstances" that may be appropriate to consider include "a creditor's sophistication, the amount of their involvement in the bankruptcy proceeding, as well as, that creditor's reliance on the claims allowance procedures as demonstrated by a proof of claim filed before plan confirmation." *Basham*, 167 B.R. at 908 (adopting a flexible so-called "middle-of-the road approach"). This judge believes other special factors may result in an uneasy feeling regarding the adequacy of notice including whether an individual creditor is literate, is absent for a lengthy period from his or her residence when service is made by mail (e.g., spending a month or two in Florida), or is aged or infirm to a degree that causes the individual extreme difficulty in understanding the notice, *and that the debtor knew of the individual creditor's special circumstances.* A court may properly consider these types of unique factors when adequacy of notice is later challenged and becomes an issue.

## D. Challenging The Binding Effect Of A Confirmed Chapter 13 Plan.

■ Some reported opinions seem to declare that a chapter 13 plan that is confirmed without proper notice is ineffective. Thus collateral attacks on the binding effect of confirmation orders appear to be permissible. To the extent that any court decision may be interpreted to encourage or buttress collateral attacks on confirmation orders, this judge respectfully disagrees with that decision. Even assuming a confirmation order is defective, whether because of defective notice or any other reason, it remains binding until procedures are utilized to successfully revoke or obtain relief from the order. *Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134 (even assuming jurisdiction is nonexistent, a court order remains binding unless subsequently set aside).

### 1. Revocation Of A Confirmation Order.

The Bankruptcy Code permits a chapter 13 confirmation order to be revoked under very limited circumstances.

On request of a party in interest at any time within 180 days after the date of the entry of an order of confirmation under section 1325 of this title, and after notice and a hearing, the court may revoke such order if such order was procured by fraud.

§ 1330(a).

■ Some courts have held that § 1330 is the only method by which to set aside a chapter 13 confirmation order. *See, e.g., Branchburg Plaza Assocs v. Fesq (In re Fesq)*, 153 F.3d 113 (3d Cir.1998) (2–1 decision); *Mason v. Young (In re Young)*, 237 B.R. 791 (10th Cir. BAP 1999) (adopting the *Fesq* majority opinion). To revoke a chapter 13 confirmation order, an adversary proceeding must be instituted. Rule 7001(5).

### 2. Setting Aside A Confirmation Order Pursuant To Bankruptcy Rule.

FED.R.CIV.P. 60 applies in bankruptcy cases with three exceptions. Rule 9024. One exception is that "a complaint to revoke an order confirming a plan may be filed only within the time allowed by ... § 1330." *Id.* Rule 9024 permits a bankruptcy court to set aside orders for specified reasons as follows:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under

Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have any prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Rule 9024, incorporating by reference FED. R.CIV.P. 60(b). Generally, a motion to relieve a party from an order must be made within one year of the date the order was entered. *Id.*

As noted above, it has been held that Rule 9024 is inapplicable to setting aside or revoking chapter 13 confirmation orders because the Bankruptcy Code, § 1330, trumps Rule 9024 because a rule "shall not abridge, enlarge, or modify any substantive right." *Fesq,* 153 F.3d at 116 (citing 28 U.S.C. § 2075). The majority in *Fesq* also states: "We adhere to all the relevant considerations—plain meaning, logic, case law and the policies underlying the Code— to hold that fraud is the only ground for relief available for revocation of a Chapter 13 confirmation order." *Fesq,* 153 F.3d at 120.

 *Fesq* is probably correct as far as it goes. However, it is important to note that constitutional requirements will trump a conflicting statute, just as a statute will trump a conflicting rule. *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 388, 1 L.Ed. 648 (1798) (Chase, J.) ("An ACT of the Legislature (for I cannot call it a law) contrary to the great first principles of the social compact [i.e. the United States Constitution], can-

not be considered a rightful exercise of legislative authority."). "[T]he Supreme Court has repeatedly held that the laws passed pursuant to the Bankruptcy Clause are subject to the requirements of due process." Richards at 45 (footnote omitted). Therefore, notwithstanding the *Fesq* majority opinion, Rule 9024 may be utilized to set aside or relieve a party from the effect of a chapter 13 confirmation order when notice is constitutionally inadequate. *See, e.g., Reliable Elec. Co., Inc. v. Olson Constr. Co.,* 726 F.2d 620, 623 (10th Cir.1984) (chapter 11 case) ("A fundamental right guaranteed by the Constitution is the opportunity to be heard when a property interest is at stake. Specifically, the reorganization process depends upon all creditors and interested parties being properly notified of all vital steps in the proceeding so they may have the opportunity to protect their interests. We will not require [the creditor] to subject its claim to a confirmed reorganization plan that it had no opportunity to dispute.") (footnote omitted).[40]

### E. *The Comprehensive Analysis Applied To This Case.*

#### 1. *The Ruling.*

 The Bank received proper notice of the Debtors' chapter 13 case. The Bank received a copy of the Plan Summary which informed the Bank that its claim would be secured for $8,000 and interest on the secured portion of the claim would be an estimated twelve percent per annum. The Bank received notice of the confirmation hearing date and the deadline by which objections to confirmation must be filed.

**40.** In this opinion, the court is not called upon to explicitly determine what relief might be appropriate under Rule 9014 when notice is constitutionally deficient.

The Bank failed to object to confirmation and the Debtors' plan was confirmed. The confirmed plan is binding upon the Bank, the Debtors, the trustee, and all other parties in interest. The Bank's subsequent filing of a Proof of Claim which is different from the treatment in the confirmed plan is irrelevant. The so-called claims allowance process does not defeat or otherwise undermine the treatment of the Bank's secured claim pursuant to the Debtor's confirmed chapter 13 plan. However, upon filing of its claim, the Bank became an "allowed secured creditor" and therefore is entitled to distribution in accordance with the terms of the confirmed plan.

The Bank has not sought to revoke the Debtors' confirmed plan under § 1330(a). No adversary proceeding to accomplish revocation has been filed.[41] Rule 7001(5).

The Bank has not filed any motion under Rule 9024 which seeks to set aside the confirmation order premised upon constitutionally inadequate notice. Therefore, notwithstanding the type of notice (boilerplate notice was used by the Debtors) in the plan summary and the ambiguity regarding the interest rate, the plan remains binding.[42]

## 2. *Retroactive v. Prospective Effect of This Decision.*

The Bank (and the chapter 13 trustee) has requested that the court only apply this decision prospectively. However, the authority cited by the Bank in its brief only deals with the prospective application of statutes, not of judicial decisions.

The court declines the parties' request. "The principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student." *United States v. Security Indus. Bank*, 459 U.S. 70, 79, 103 S.Ct. 407, 413, 74 L.Ed.2d 235 (1982) (citing SUTHERLAND'S STATUTORY CONSTRUCTION, § 106 and *Linkletter v. Walker*, 381 U.S. 618, 622–25, 85 S.Ct. 1731, 1733–35, 14 L.Ed.2d 601 (1965)). This decision will apply retroactively.[43]

## V.

## *CONCLUSION*

The Debtors' objection to the claim of the Bank is sustained. The Bank shall be treated in accordance with the Debtors' previously confirmed chapter 13 plan. An order shall be entered accordingly.

---

**41.** Given the facts of this case, it appears there is no valid reason for the Bank to file such a complaint.

**42.** At the hearing regarding this contested matter, the Debtors and the Bank stipulated to an interest rate. Therefore, the ambiguity between the plan and plan summary stating the present value interest rate has been cured.

**43.** The trustee believes applying the decision retroactively may result in substantial administrative burdens. Upon consideration, this judge doubts that the burdens will be onerous. In many of the chapter 13 cases with confirmed plans, there were payment orders entered after the plan confirmation orders. The payment orders mandate the amounts to be paid to creditors holding secured claims.