**In re Edward Pete FRIDAY and Patricia Lynn Friday, Debtors.**

**No.  A01–85788–SWC.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Oct. 8, 2003.

E.L. Clark, Clark & Washington, Atlanta, GA, for Plaintiff.

### ORDER

STACEY W. COTTON, Bankruptcy Judge.

Before the court is a motion filed by Debtors Edward Pete Friday and Patricia Lynn Friday ("Debtors") to modify their confirmed Chapter 13 Plan and modify secured creditors' rights. It appears that Debtors seek to modify the rate of interest to be paid two secured creditors, other than one secured only by Debtors' principal residence. The question is whether the modification and its service are sufficient to provide due process notice to the two secured creditors to support approval of the modification of the confirmed plan and of the secured creditors' rights. 11 U.S.C. §§ 1322(b)(2), 1323, 1329. This matter was submitted on the record without presentation of evidence by any party. This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A),(B),(K), and (L). Upon consideration of the record and argument, the court's findings of fact and conclusions are set forth below.

### FACTS

Debtors filed their joint Chapter 13 Petition, Schedules, Statement of Financial Affairs and Chapter 13 Plan on September 18, 2001. Paragraph # 9 of the plan, entitled "Other Provisions," provides

> [a] secured claim, other than a mortgage arrearage claim, shall receive interest at the rate of 12% on the value of the collateral securing the claim unless the proof of claim provides otherwise and then at the rate provided in the note and security instrument.

The court clerk served all scheduled creditors with notice of the bankruptcy filing, including, among other things, notice of the January 1, 2002 deadline for filing proofs of claim and a summary of Debtors' plan. Transouth Financial Corporation ("Transouth") and Wilkes Finance Corporation ("Wilkes") were not scheduled as creditors. The plan summary did not provide any notice or disclosure of the proposed treatment of claims of secured creditors set forth in paragraphs # 5, # 8, and # 9 of Debtors' plan. The complete plan was never served on the scheduled creditors nor on unscheduled creditors Transouth and Wilkes.

The Debtors' plan did not identify each secured creditor whose claim is to be modified nor state with particularity how it would adversely impact each secured creditor's claim. The court record does not indicate the basis for the proposed 12% interest rate.[1] While the Chapter 13 Trustee objected to certain aspects of this plan prior to confirmation, the issue of a possible reduction of the interest rate on secured claims to 12% was not raised.

On October 10, 2001, a representative of Transouth filed a request for all notices and also a proof of secured claim in the amount of $13,172.40, secured by a vehicle, with an interest rate of 20%.[2] No other secured creditor filed a proof of claim prior to confirmation of the Debtors' plan. Debtors did not file a proof of claim for any secured creditor.[3] On November 30, 2001, an order was entered confirming Debtors' plan.

On March 14, 2002, over two months past the last date for filing claims, Wilkes filed an untimely proof of a secured claim in the amount of $674.83, secured by household items of an alleged value of $2,000.[4] While not stated in the proof of claim, attached documentation supporting the proof of claim reflects an interest rate of 44.05%. On April 8, 2002, the Trustee filed and served Debtors with a notice of intent to pay Wilkes's late filed claim, subject to objection. No objection to these claims has been filed. Therefore, both Transouth's and Wilkes's proofs of claim are deemed allowed pursuant to 11 U.S.C. § 502(a).

Eight months after confirmation, on July 22, 2002, Debtors filed an amendment to paragraph # 9 of their confirmed plan as follows[5]:

[a] secured claim, other than a mortgage arrearage claim, shall receive interest at the rate of 12% on the value of the collateral securing the claim unless the proof of claim provides *lower* and then at the rate provided in the note and security instrument. (emphasis supplied).

The only difference in language in the original paragraph # 9 and in this amendment is the substitution of the word "lower" for the word "otherwise."[6] The certif-

---

1. The court notes that the Supreme Court has granted certiorari regarding the proper approach for determining the applicable rate of interest under the Chapter 13 cramdown provision. *See In re Till*, 301 F.3d 583 (7th Cir.2002) (selecting the "coerced loan" approach rather than the "cost of funds" approach); *accord Koopmans v. Farm Credit Services of Mid–America, ACA (In re Koopmans)*, 102 F.3d 874 (7th Cir.1996); *but see Household Automotive Finance Corporation v. Burden, Trustee (In re Kidd)*, 315 F.3d 671 (6th Cir.2003).

2. The record does not reflect how or when Transouth received notice of Debtors' case.

3. Fed. R. Bankr.P. 3004: *If a creditor fails to file a proof of claim on or before the first date set for the meeting of creditors called pursuant to § 341(a) of the Code, the debtor or trustee may do so in the name of the creditor, within 30 days after expiration of the time for filing*

*claims prescribed by Rule 3002(c) or 3003(c), whichever is applicable. . . .*

4. It is unclear how or when Wilkes learned of the bankruptcy filing. The record reflects that Wilkes was served the modification to the plan filed on July 22, 2002.

5. On July 10, 2002, debtors filed their first amendment to their Chapter 13 Plan, increasing their monthly plan payment to the Chapter 13 Trustee and modifying Schedules I and J, in response to the Trustee's motion to dismiss. This modification is not relevant to the proposed decrease in interest rates. The court notes that this modification was served using the creditors' matrix from the wrong case.

6. There is also a change in sub-paragraph 2 of the amendment, relating to a mortgage arrearage claim, which is not relevant here.

icate of service indicates that all creditors, the Chapter 13 Trustee, and Debtors were served with copies of the amendment. Transouth and Wilkes were served at the addresses which appear on their proofs of claim and which were added to the creditor matrix.

On August 12, 2002, Debtors filed another amendment to their confirmed plan, to amend paragraph # 9 of their plan as follows:

A secured claim, other than a mortgage arrearage claim, shall receive interest at the rate of 12% on the value of the collateral securing the claim unless the proof of claim provides lower and then at the rate provided for in the note and security instrument. Specifically, Debtor's [sic] shows creditors Wilkes Financial Corporation and Transouth Financial Corporation.

Transouth and Wilkes are named in a sentence fragment at the end of this amendment which makes no sense. Nothing in the amendment indicates what Debtors are attempting to show with regard to the two named creditors. On August 23, 2002, the Chapter 13 Trustee objected to Debtors' modification, including an objection that Debtors' proposed decrease in the rate of interest was without adequate notice to creditors.

On October 3, 2002, Debtors for the first time filed a properly captioned pleading entitled "MODIFICATION OF CONFIRMED CHAPTER 13 PLAN AND MODIFICATION OF SECURED CREDITORS' RIGHTS," typed in bold face and all capital letters. This pleading appears also to amend paragraph # 9 and uses substantially the same language as that used in the August 12, 2002 amendment, but sets out in bold face type both the 12% rate of interest and the following phrase: ... "**unless the proof of claim provides a lower interest rate....**" It omits the sentence fragment in the August 12, 2002 amendment which names Transouth and Wilkes.

Finally, immediately below the above-referenced language, Debtors' October 3, 2002 modification also sets out a notice, in bold, as follows:

**NOTICE IS GIVEN TO CREDITORS WILKES FINANCIAL CORPORATION AND TRANSOUTH FINANCIAL CORPORATION:**

**THIS MODIFICATION MAY AFFECT YOUR RIGHTS NEGATIVELY AND MAY RESULT IN LESS MONEY BEING PAID ON YOUR CLAIM. YOUR FAULIRE [sic] TO FILE A WRITTEN OBJECTION TO THIS MODIFICATION WITHIN 28 (TWENTY–EIGHT) DAYS MAY RESULT IN THE COURT APPROVING THIS MODIFICATION WITHOUT FURTHER NOTICE OF HEARING.**

The certificate of service reflects service on Debtors, the Chapter 13 Trustee, all creditors on the creditor matrix, and on Transouth and Wilkes at the addresses on their proofs of claim.

## DISCUSSION

Section 1322, which declares the necessary contents of a Chapter 13 Plan, provides that a debtor may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims...." § 1322(b)(2). However, in order to modify the rights of a secured claim, it is incumbent upon a debtor to give adequate notice to the secured claimant. In *Mullane v. Central Hanover Bank & Trust Co. et al.*, 339 U.S. 306, 70 S.Ct. 652,

94 L.Ed. 865 (1950), the Supreme Court set forth such notice requirements:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. . . . The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance. . . . The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected.

*Id.*, at 314, 70 S.Ct. at 657 (citations omitted); *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). In *Mullane,* the Court found that newspaper publication was adequate notice for beneficiaries whose interests or whereabouts were unknown as well as for those whose interests were merely conjectural. However, such notice did not satisfy due process requirements where the beneficiaries and their addresses were known.

■ Under *Mullane,* in seeking to modify secured creditors' claims pursuant to a Chapter 13 Plan or a modification of a confirmed plan, a debtor must provide notice reasonably calculated under the circumstances to apprise creditors of the proposal and afford them an opportunity to present their objections. *Pope v. United Company Lending Corporation (In re Pope),* 1997 WL 33344310 (Bankr.D.S.C. 1997) ("'the notice will be sufficient if it allows the creditor to determine how the plan proposes to maltreat its claim; that should alert the creditor to object to confirmation.'") (citations omitted).

■ At a minimum, a proposed plan or plan modification should set forth the following: (1) identity of debtor;[7] (2) the name of each creditor whose claim or claims is to be modified; (3) the proposed modifications of the rights of each secured claim with sufficient particularity to enable each creditor to determine how the proposed plan or plan modification will impact each secured creditor's claim; and (4) whether the secured claimant is to retain its lien or its collateral is to be surrendered.[8]

■ Each creditor must be served with a copy of the entire plan. Further, each creditor must be served with notice of the date by which an objection to plan confirmation or plan modification must be filed

---

**7.** This is perhaps handled best by using the caption of the bankruptcy case which would contain the name of the court, the Debtor's name, and the case number. *See* Fed. R. Bankr.P. 1005.

**8.** See *In re Hudson,* 260 B.R. 421 (Bankr. W.D.Mich.2001), which provides another listing of what information should be in the notice: (1) the correct name of the creditor; (2) the creditor's correct address. . . (3) the account number, or loan identification number, used by the creditor to monitor the debt; (4) a description of the specific property which secures the creditor's indebtedness (a creditor may have more than one loan secured by different items or categories of collateral); (5) the asserted value of the collateral which will establish the secured claim under § 506(a); (6) the present value interest rate . . . to be paid on the secured claim amount; (7) an explicit statement that the creditor will retain its lien; (8) if the lien is to be later extinguished, the timing of the lien extinguishment (e.g., upon the completion of the secured claim payments, upon completion of all plan payments, or when the debtor's discharge is granted); and (9) any other material information regarding the proposed modification or satisfaction of the creditor's secured claim.

and notice of the date for hearing or opportunity for hearing on the plan confirmation or modification.[9] Additionally, Fed. R. Bankr.P. 2002(b) provides that parties be given 25 days notice of the time fixed for filing objections to confirmation while Fed. R. Bankr.P. 2002(a)(5) provides that parties be given 20 days notice of the time fixed to accept or reject a proposed modification of a confirmed plan. Service of a copy of the plan or plan modification must be made in accordance with Fed. R. Bankr.P. 2002(g)(1) which provides how adequate notice should be addressed:

> [notices] shall be addressed as such entity or an authorized agent has directed in its last request filed in the particular case... (A) a proof of claim ... that designates a mailing address constitutes a filed request to mail notices to that address.... (2) If a creditor ... has not filed a request designating a mailing address under Rule 2002(g)(1), the notices shall be mailed to the address shown on the list of creditors or schedule of liabilities, whichever is filed later.

### Confirmed Plan

Debtors' confirmed plan provides, among other things, that secured creditors' claims be paid interest at 12% unless the proof of claim provides otherwise and then at the contract rate. Transouth's and Wilkes's secured proofs of claim provide for interest of 20% and 44.05%, respectively. Even if the plan provision is construed most favorably to Debtors, the inartfully drawn language of Debtors' confirmed plan requires that secured claims are to be paid at the "otherwise provided" interest rates set forth in the proofs of claim filed by these two creditors.

The court file does not reflect that Debtors scheduled Transouth and Wilkes as creditors. Likewise, there is no certificate of service or other evidence that Transouth and Wilkes were served with a copy of Debtors' original plan or plan summary. However, Transouth and Wilkes obviously acquired notice of the case as each filed its proof of secured claim. The facts relating to the Debtors' secured creditors' claims or the 12% interest rate were not put in issue or otherwise brought to the court's attention at confirmation. It appearing that the plan complied with the Bankruptcy Code, the plan was confirmed. Pursuant to the confirmed plan, these two allowed secured claims are to be paid to the extent of the lesser of the value of their collateral or their debt plus contract interest at the rate set forth in their respective proofs of claim.

### Proposed Modifications

■ Beginning eight months after confirmation, Debtors filed modifications to their confirmed plan, on July 22nd, August 12th, and October 3, 2002. This fact evidences an apparent recognition by Debtors that their confirmed plan did not reduce the interest rate payable to secured creditors to 12%. The Chapter 13 Trustee objected to the July 22nd and August 12th proposed modifications, including a lack of adequate notice to creditors. Debtors' October 3, 2002 modification appears to be an effort to satisfy the Trustee's objections.

It appears that Debtors' amendments seek to modify the rights of Transouth and

---

9. A hearing may not actually be required. 11 U.S.C. § 102(a): *(1) after notice and a hearing... (A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but (B) authorizes an act without an actual hearing if such notice is given properly and if-(i) such a hearing is not requested timely by a party in interest; or (ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act....*

Wilkes by reducing the interest rate of their secured claims to the "lower" of 12% or the contract rate. This is a change from the provision in their confirmed plan. It provides that secured claims should be paid interest at a 12% rate or the contract rate if *otherwise* set forth in the proof of claim, *whether higher or lower.* The first two amendments do not state Debtors are proposing to modify a confirmed plan. Neither amendment names or clearly states that the rights of Transouth and Wilkes are modified by reducing the interest rate on their secured claims from 20% and 44.05%, respectively, to 12%. Although the August 12, 2002 amendment contains the names of Transouth and Wilkes, it does so in a sentence fragment that makes no sense.

Likewise, the October modification does not name Transouth and Wilkes in the text of the amendment or state that the rights of Transouth and Wilkes are being modified. While the notice contained in this amendment names and is directed to Transouth and Wilkes, it merely states that the modification *may* affect the creditors' rights negatively and *may* result in the payment of less money on their claims.

■ Debtors have the burden of stating modifications with particularity. A statement of a possibility that secured claims *may* be affected is inadequate when modification of their rights and allowed secured claims is the clear object. Affected creditors should not be left to guess whether or in what particulars their rights are to be modified and the effect on their claims. This is particularly so, where as here, these secured creditors have allowed claims which set forth their interest rates. Debtors' pleadings appear to have been drawn without any acknowledgment or reference to these allowed claims.

Finally, while the October 3rd modification contains a notice of an opportunity to object, those filed on July 22nd and August 12th do not. None provide notice of the date for hearing or opportunity for hearing to approve the plan modification. 11 U.S.C. § 102(1).

Upon consideration of the entire record, the court finds that the provisions of Debtors' confirmed plan and proposed modifications are insufficient to properly apprise each secured creditor how its rights are modified and the impact on each claim. Neither the confirmed plan nor plan summary has been served on Transouth or Wilkes. Without the confirmed plan, Transouth and Wilkes would be unable to determine what was being modified or exactly how their claims are to be treated. This is particularly true since secured creditor claims' treatment is set forth in paragraphs # 5, # 8, and # 9 of Debtors' confirmed plan. Paragraph # 5(b) purports to also modify secured creditor claims which appears to conflict with paragraph # 9 and the postconfirmation amendments of paragraph # 9. Finally, neither of these paragraphs refer to the other. Common sense suggests that such provisions should be combined in the same part of a plan.

Therefore, the court concludes that Debtors' confirmed plan fails to provide meaningful due process notice to these two secured creditors. Since Transouth and Wilkes have not objected and have been accepting payments pursuant to Debtors' confirmed plan which will pay them in full, the court will not set aside or vacate the order of confirmation. However, if the higher interest rates result in the plan term being extended beyond 60 months which cannot be cured, dismissal may be required.

Likewise, the court concludes that each of Debtors' proposed plan modifications fails to provide meaningful due process

notice to these two secured creditors. For these reasons, Debtors' proposed modification of their confirmed plan must be denied. Accordingly, it is

ORDERED that Debtors' motion to modify their confirmed Chapter 13 Plan and the rights of secured creditors Transouth and Wilkes is denied.

The clerk is directed to serve a copy of this order upon Debtors, Debtors' counsel, creditors, the Chapter 13 Trustee, and the United States Trustee.

IT IS SO ORDERED.